E-FILED; Harford Circuit Court
Docket: 12/2/2021 9:31 AM; Submission: 12/2/2021 9:31 AM
E-FILED; Harford Circuit Court
Clerk: Office 410-638-3426



**CIRCUIT COURT FOR HARFORD COUNTY, MARYLAND**
20 W. Courtland Street
Bel Air, Maryland  21014

**To:**  FACEBOOK INC
CSC-LAWYERS INCORPORATING SERVICES COMPANY
7 ST. PAUL STREET, STE 820
BALTIMORE, MD 21202

|  |  |
|---|---|
| **Case Number:** | C-12-CV-21-000726 |
| **Other Reference Number(s):** |  |
| **Child Support Enforcement Number:** |  |

**TIARA JOHNSON VS. FACEBOOK INC**

Issue Date: 12/2/2021

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

TIARA N JOHNSON
4740 WILLINSTON STREET
BALTIMORE, MD  21229

This summons is effective for service only if served within 60 days after the date it is issued.

*James Reilly*

James Reilly
Clerk of the Circuit Court

To the person summoned:
    Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
    Personal attendance in court on the day named is NOT required.

Instructions for Service:

1.  This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2.  Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3.  Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4.  If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**TIARA JOHNSON vs. FACEBOOK INC**

**Circuit Court for Harford County**
**Case Number: C-12-CV-21-000726**

## SHERIFF'S RETURN
### (please print)

To:  FACEBOOK INC

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
Name of person served

on _____ at _____
Date of service                                    Location of service

_____ by _____ with the following:
Manner of service

☐ Summons                    ☐ Counter-Complaint
☐ Complaint                   ☐ Domestic Case Information Report
☐ Motions                     ☐ Financial Statement
☐ Petition and Show Cause Order   ☐ Interrogatories
☐ Other _____
Please specify

(2) Was unable to serve because:
☐ Moved left no forwarding address    ☐ No such address
☐ Address not in jurisdiction          ☐ Other _____
Please specify

Sheriff fee: $ _____    ☐ waived by _____

_____        _____
Date                          Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

Tiara N. Johnson            \*   In the Circuit Court
    4740 Willinston Street
    Baltimore, MD 21229            \*   For

                   Plaintiff    \*   Harford County

        vs.                 \*

                           \*

Facbook Inc.,              \*   Case No.:  C-12-CV-21-000726
    Serve on:
    CSC-Lawyers Inc. Service Co.    \*
    7 St. Paul Street
    Suite 820                  \*
    Baltimore MD 21202

                           \*

John Doe

                   Defendant    \*

# COMPLAINT

Comes Now, Tiara N. Johnson, Plaintiff, by and through her attorneys, Jimi Kolawole, and Kolawole Law Firm LLC, file this Complaint against Facebook Inc. (now known as Meta Inc.) and in support thereof state as follows:

1. Plaintiff is the owner and operator of the verified Instagram Account (@LICKMYKAKEZ) where Plaintiff is a purveyor of fine adult toys and has gained over 2.8 million followers, customers, and clients who regularly patronize her products on Facebook and Instagram.

2. Defendant, Facebook Inc., is the owner and operator of the app known as Instagram. Facebook is a corporation registered to do business in the State of Maryland.  It is engaged in the business of software development and Instagram is one of its products.

3. Defendant, John Doe, is a person whose identity is unknown but known to Defendant, Facebook Inc.  The identification of John Doe will be provided upon information from Facebook Inc.

4. Instagram is a free social networking service built around sharing photos and videos.  It launched in October 2010 on iPhone first and became available on Android in April 2012. Facebook purchased the service in April 2012 and has owned it since.

5. Like most social media apps, Instagram allows you to follow users that you're interested in. This creates a feed on your homepage, showing recent posts from everyone you follow.  You can like posts, comment on them, and share them with other people.

6. In addition to posting regular photos and videos, which stay on your page permanently, Instagram also supports stories. Stories allow you to post many photos and video clips in a series. Anyone can view these for 24 hours, after which they expire.

7. That's not all the options for video; Instagram offers IGTV and Reels, as well. Reels are a lot like what you'll find on TikTok: short video clips that are easier to share and find than stories. And IGTV is for longer-form video that you want to keep on your profile.

8. Aside from all this, Instagram also supports direct messaging so you can chat with friends in private. You can also explore profiles to see what else you might have interest in.

**Count I**

**Breach of Contract**

9. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

10. Sometime in 2011, Plaintiff downloaded the Instagram app and created an account on Instagram.

11. Sometime in the year 2011, Plaintiff downloaded the Instagram App. Facebook purchased Instagram in February of 2012 and thereafter, Facebook Inc. entered into an agreement with Plaintiff to provide Plaintiff an Instagram account for free in exchange for showing Plaintiff advertisements and a limited use of Plaintiff's online data and behavior. See Exhibit A Instagram Terms of Use.

12. The terms of the contract require that

    a. Plaintiff is older than 13 years old; Plaintiff must not be prohibited from receiving any aspect of Facebook's service under applicable laws or engaging in payments related Services; Plaintiff's account has not been previously disabled for violation of low or any of Facebook's policies; Plaintiff is not a convicted sex offender; Plaintiff cannot impersonate or provide inaccurate information; Plaintiff cannot do anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose; Plaintiff cannot violate (or help or encourage others to violate)these Terms or Facebook's policies including in particular the Instagram Community Guidelines, Facebook Platform Terms and Developer Policies, and Music Guidelines; See Exhibit A for additional requirements.

13. Under the terms of this Agreement,

    a.  We [Facebook] can remove any content or information you share on the Service if we believe that it violates these Terms of Use, our policies (including our Instagram Community Guidelines), or we are permitted or required to do so by law.

    b.  We [Facebook] can refuse to provide or stop providing all or part of the Service to you (including terminating or disabling your access to the Facebook Products and Facebook Company Products) immediately to protect our community or services, or if you create risk or legal exposure for us, violate these Terms of Use or our policies (including our Instagram Community Guidelines), if you repeatedly infringe other people's intellectual property rights, or where we are permitted or required to do so by law.

    c.  We [Facebook] can also terminate or change the Service, remove or block content or information shared on our Service, or stop providing all or part of the Service if we determine that doing so is reasonably necessary to avoid or mitigate adverse legal or regulatory impacts on us.

    d.  If you believe your account has been terminated in error, or you want to disable or permanently delete your account, consult our Help Center.

14. On or before January 1, 2020, Plaintiff started a business under the name KAKEYTAUGHTME selling adult toys and products. Plaintiff promoted her business on Instagram by purchasing Facebook and Instagram advertisement.

15. Plaintiff is the owner of the trademark KAKEYTAUGHTME with United States Patent & Trademark Office Application Number 88694236. See Exhibit B.

16. Plaintiff's business was a hit with her fans and her Instagram followers grew to 2.8 million followers who loved Plaintiff and purchased from her. Plaintiff was making sales of approximately $10,000 per week from the sale of her products. In addition, Plaintiff was earning from serving as an ambassador or influencer to promote hair, clothes, and making videos inviting her followers to use different products.

17. On or about July 1, 2021, Facebook disabled Plaintiff's account and interrupted Plaintiff's business and her ability to communicate with her over 2.8 million followers, customers, and clients.

18. Facebook has failed to communicate with Plaintiff on why her account was disabled or blocked. All efforts to reach Facebook via its Help Center has been abortive. Plaintiff did not violate any term of use.

19. Following Facebook disabling Plaintiff's account, Plaintiff was informed that a John Doe was paid to have her account suspended or "bring her account down" and after Facebook's action, John Doe notified others.



See Exhibit D.

20. Plaintiff contacted John Doe who informed her that stated that Facebook will not respond to Plaintiff's responses.   However, John Doe promised that he can get a Facebook Pro to reactivate Plaintiff's account for $3000.  A desperate Plaintiff paid but much to no surprise, John Doe blocked Plaintiff and subsequently disappeared.

21. Since the suspension of Plaintiff's Instagram account, Facebook has permitted new false and imitation accounts that claim to be Plaintiff and violating Plaintiff's trademark.  See Exhibit C.

22. Plaintiff has incurred a loss of seventy-five thousand dollars because of the breach by Facebook Inc.

WHEREFORE, Plaintiff, Tiara Johnson, demands judgment against Facebook Inc. in the amount of seventy -five thousand dollars plus interest and costs.

## Count II

### Tortious Interference with Contractual Relations.

23. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

24. On or before July 1, 2020, Plaintiff entered an agreement with Facebook Inc in exchange for the use of Facebook's Instagram application.  A copy of Instagram's Terms of Use is attached and marked as Exhibit A.

25. Plaintiff operated an Instagram account @LICKMYKAKEZ where she was a purveyor of fine adult paraphernalia.  Plaintiff's Instagram account was a VERIFIED account with over 2.8 million followers.  Due to Plaintiff's significant followers, Plaintiff enjoyed a substantial revenue of about ten thousand dollars per week from the sales of her inventory.

26. Defendant, John Doe, was aware of Plaintiff's existing contract with Facebook Inc.  John Doe is an Instagram user, and every user of Instagram is required to enter into an agreement to use the app.

27. On or before July 1, 2021, and without legal justification, John Doe intentionally and improperly interfered with Plaintiff's contract with Facebook Inc by relentlessly filing false report through his own accounts and other Instagram account under his control with Facebook with the intent of getting Facebook to suspend or disable Plaintiff's account.  John Doe was aware that by filing false report with Facebook, Facebook would suspend or disable Plaintiff's account.

28. Upon information and belief, John Doe was paid by Plaintiff's competitor to bring down Plaintiff's account.  John Doe confirmed as such in his correspondence with Plaintiff.

29. Further, John Doe was aware that there is no human intervention when Facebook suspends or disable an account and Plaintiff would be unable to reach a human to review the allege false filings.

30. As a result of John Doe's false filings, Facebook suspended Plaintiff's account without legal justification on July 1, 2021, thereby making Facebook breach its contract with Plaintiff as the suspension was without any legal justification.

31. As a result of John Doe's conduct, Plaintiff has suffered and continues to suffer lost profits and other consequential damages.

WHEREFORE, Plaintiff, Tiara Johnson, demands judgment against John Doe in the amount of seventy-five thousand dollars plus interest and costs.

### Count III

### Tortious Interference with Prospective Relations.

32. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

33. Plaintiff operated an Instagram account @LICKMYKAKEZ where she was a purveyor of fine adult paraphernalia. Plaintiff's Instagram account was a verified account with over 2.8 million followers. Due to Plaintiff's significant followers, Plaintiff enjoyed a substantial revenue of about ten thousand dollars per week from the sales of her inventory.

34. Plaintiff purchased advertisement from Facebook and a majority of Plaintiff's sales were through Instagram and Facebook sale applications.

35. On or about July 1, 2021, Facebook Inc disabled or suspended Plaintiff's Instagram account with the intention of ending Plaintiff's account and causing customers to cease dealing with Plaintiff. Facebook's action was initiated by John Doe's false report of Plaintiff's activities alleging that Plaintiff's postings violated Instagram's terms of use.

36. By terminating Plaintiff's account without justification, Facebook was informing the public that Plaintiff was violating the law or Facebook's terms of use. Facebook failed to provide Plaintiff with a reasonable opportunity to respond to the false filings.

37. The conduct of Facebook was intentional, willful, and calculated to cause damage to Plaintiff's lawful business. The conduct of Facebook was perpetrated with the intentional and improper purpose of causing damage and was without justifiable cause.

38. As a result of Facebook's conduct and actions, Plaintiff has suffered and will continue to suffer lost profits, other consequential damages, and harm to reputation.

WHEREFORE, Plaintiff, Tiara Johnson, demands judgment against Facebook Inc. in the amount of seventy-five thousand dollars plus interest and costs.

## Count IV
### Federal Trademark Infringement

39. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

40. Plaintiff operated an Instagram account @LICKMYKAKEZ where she was a purveyor of fine adult paraphernalia. Plaintiff's Instagram account was a VERIFIED account with over 2.8 million followers. Due to Plaintiff's significant followers, Plaintiff enjoyed a substantial revenue of about ten thousand dollars per week from the sales of her inventory.

41. Plaintiff is the owner of the trademark KAKEYTAUGHTME with United States Patent & Trademark Office Application Number 88694236. See Exhibit B.

42. Pursuant to the suspension of Plaintiff's Instagram verified account, there has been a proliferation of imitation Instagram accounts such as KAKEYOFFICIAL, KAKEY.B.K.A, _LICKMYKAKEY._, TIARA_KAKEY, KAKEY_PRIVATE101, LICKMYKAKEZ111113, LICKMYKAKEZ123. See Exhibit C. Some of these accounts use Plaintiff's name Tiara in their profile to increase the likelihood of confusion of consumers.

43. Facebook/Instagram's use of a confusingly similar imitation of KAKEYTAUGHTME mark is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Facebook's goods and services are manufactured or distributed by Plaintiff, or are associated or connected with Plaintiff, or have the sponsorship, endorsement, or approval of Plaintiff.

44. Facebook/Instagram's use of confusingly similar mark to Plaintiff's federally registered marks in violation of 15 U.S.C. § 1114. Facebook's activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by KAKEYTAUGHTME mark, for which Plaintiff has no adequate remedy at law.

45. Facebook/Instagram's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's KAKEYTAUGHTME mark to Plaintiff's great and irreparable harm.

46. Facebook/Instagram's caused and is likely to continue causing substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Facebook's profits,

actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C.§§ 1114, 1116, and 1117.

## Count V
## Federal Unfair Competition

47. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

48. Plaintiff operated the Instagram account @LICKMYKAKEZ where she was a purveyor of fine adult paraphernalia. Plaintiff's Instagram account was a VERIFIED Instagram account with over 2.8 million followers. Due to Plaintiff's significant followers, Plaintiff enjoyed a substantial revenue of about ten thousand dollars per week from the sales of her inventory.

49. Plaintiff is the owner of the trademark KAKEYTAUGHTME with United States Patent & Trademark Office Application Number 88694236. See Exhibit B.

50. Pursuant to the suspension of Plaintiff's Instagram verified account, there has been a proliferation of imitation Instagram accounts such as KAKEYOFFICIAL, KAKEY.B.K.A, _LICKMYKAKEY._, TIARA_KAKEY, KAKEY_PRIVATE101, LICKMYKAKEZ111113, LICKMYKAKEZ123. See Exhibit C. These accounts also use Plaintiff's first name Tiara in the profile to further confuse users.

51. Facebook/Instagram's has made false representations, false descriptions, and false designations of, on, or in connection with its goods in violation of 15 U.S.C. § 1125(a). Facebook/Instagram's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by Plaintiff's KAKEYTAUGHTME mark, for which Plaintiff has no adequate remedy at law.

52. Facebook/Instagram's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's KAKEYTAUGHTME mark to the great and irreparable injury of adidas.

53. Facebook/Instagram's conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiff. Plaintiff is entitled to injunctive relief and to recover Plaintiff's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count VI

### Federal Trademark Dilution

54. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

55. Since January 2020, Plaintiff has exclusively and continuously promoted and used the KAKEYTAUGHTME mark both in the United States and throughout the world.  The mark became a famous and well-known symbol of Plaintiff and Plaintiff's products well before Facebook/Instagram began using or offering the infringing marks.

56. Facebook/Instagram's use of imitation of Plaintiff's marks dilutes and is likely to dilute the distinctiveness of Plaintiff's mark, tarnishing and degrading the positive associations and prestigious connotations of the mark, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's goods.

57. Facebook/Instagram's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's KAKEYTAUGHTME mark or to cause dilution of the mark to the great and irreparable injury of Plaintiff.

58. Facebook/Instagram has caused and will continue to cause irreparable injury to Plaintiff's goodwill and business reputations, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive KAKEYTAUGHTME mark in violation of 15 U.S.C. § 1125(c). Plaintiff therefore is entitled to injunctive relief and to Facebook's profits, actual damages, enhanced profits and damages, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

## Count VII

### Unfair and Deceptive Trade Practices

59. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

60. Facebook/Instagram has been and is passing off its goods as those of Plaintiff, causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of Facebook/Instagram goods, causing a likelihood of confusion as to Facebook/Instagram affiliation, connection, or association with Plaintiff, and otherwise damaging the public.

61. Facebook/Instagram conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the unfair and deceptive trade practices statutes of several states, including Maryland BUS. REG. §§ 1-401 – 1-415, California CAL. BUS. & PROF. CODE § 17200, et seq. (West 2009); Colorado, COLO. REV. STAT. ANN.

§§ 6-1-101 to 6-1-115 (West 2009); Delaware, DEL. CODE ANN. tit. 6, §§ 2531 to 2536 (2009); Georgia, GA. CODE ANN. §§ 10-1-370 to 10-1-375 (2009); Hawaii, HAW. REV. STAT. §§ 481A-1 to 481A-5 (2009); Illinois, ILL. COMP. STAT. ANN. ch. 815, 510/1 to 510/7 (2009); Maine, ME. REV. STAT. ANN. tit. 10, §§ 1211 to 1216 (West 2009); Minnesota, MINN. STAT. ANN. § 325D.43 to .48 (West 2009); Nebraska, NEB. REV. STAT. §§ 87-301 to 87-306 (2009); New Mexico, N.M. STAT. ANN. §§ 57-12-1 to 57-12-22 (Michie 2009); New York, N.Y. GEN. BUS. Law § 349 (McKinney 2009); Ohio, OHIO REV. CODE ANN. §§ 4165.01 to 4165.04 (Baldwin 2009); and Oklahoma, OKLA. STAT. ANN. tit. 78, §§ 51 to 55 (West 2009).

62. Facebook/Instagram unauthorized use of a confusingly similar imitation of Plaintiff's KAKEYTAUGHTME mark has caused and is likely to cause substantial injury to the public and to Plaintiff. Plaintiff, therefore, is entitled to injunctive relief and to recover damages and, if appropriate, punitive damages, costs, and reasonable attorneys' fees.

## Count VIII
### Common Law Trademark and Unfair Competition

63. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

64. Facebook/Instagram's acts constitute common law trademark infringement and unfair competition, and have created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Plaintiff. Plaintiff has no adequate remedy at law for this injury.

65. On information and belief, Facebook/Instagram acted with full knowledge of Plaintiff's use of, and statutory and common law rights to, Plaintiff's KAKEYTAUGHTME mark and without regard to the likelihood of confusion of the public created by Facebook/Instagram's activities.

66. Facebook/Instagram's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's KAKEYTAUGHTME mark to the great and irreparable injury of Plaintiff.

67. As a result of Facebook/Instagram's acts, Plaintiff has been damaged in an amount not yet determined or ascertainable. At a minimum, however, Plaintiff is entitled to injunctive relief, to an accounting of Facebook/Instagram's profits, damages, and costs. Further, in light of the deliberate and malicious use of a confusingly similar imitation of Plaintiff's

KAKEYTAUGHTME mark, and the need to deter Facebook/Instagram from engaging in similar conduct in the future, Plaintiff additionally is entitled to punitive damages.

WHEREFORE, Plaintiff prays that:

1. Facebook and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Facebook, or in concert or participation with Facebook, and each of them, be enjoined from:

   a. Permitting any Instagram user to use any handle or account name that will create a likelihood of confusion with Plaintiff's KAKEYTAUGHTME mark.

   b. advertising, marketing, promoting, offering for sale, distributing, or selling goods or services using the mark KAKEYTAUGHTME or any other mark that will create a likelihood of confusion.

   c. using the KAKEYTAUGHTME mark or any other copy, reproduction, colorable imitation, or simulation of Plaintiff's KAKEYTAUGHTME mark on or in connection with any goods and services.

   d. using any trademark, account handle, name, logo, design, or source designation of any kind on or in connection with any Facebook/Instagram account user's goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiff, or are sponsored or authorized by adidas, or are in any way connected or related to Plaintiff.

2. Facebook be compelled to account to Plaintiff for any and all profits derived by Facebook/Instagram from the sale of goods or services using marks infringing on Plaintiff's mark.

3. Plaintiff be awarded all damages caused by the acts forming the basis of this Complaint.

4. Based on Facebook's knowing and intentional use of a confusingly similar imitation of the Plaintiff's KAKEYTAUGHTME mark, the damages awarded be trebled and the award of Facebook's profits be enhanced as provided for by 15 U.S.C. § 1117(a).

5. Facebook/Instagram be required to pay to Plaintiff the costs and reasonable attorneys' fees incurred by Plaintiff in this action pursuant to 15 U.S.C. § 1117(a) and the state statutes cited in this Complaint.

6.  Based on Facebook/Instagram's willful and deliberate infringement and/or dilution of the Plaintiff's mark, and to deter such conduct in the future, Plaintiff be awarded punitive damages.

7.  Plaintiff be awarded prejudgment and post-judgment interest on all monetary awards; and

8.  Plaintiff be granted such other and further relief as the Court may deem just.

Respectfully submitted,

Jimi Kolawole, Esq. CPF# 1512160013
Kolawole Law Firm LLC
7517 Cedar Grove Lane,
Elkridge, MD. 21075
443 546 8146 | oakolawole@justklf.com
Fax: 240 713 3242

Plaintiff Exhibit A

**Help Center**

# Terms of Use

**Copy Link**

Welcome to Instagram!

These Terms of Use (or "Terms") govern your use of Instagram, except where we expressly state that separate terms (and not these) apply, and provide information about the Instagram Service (the "Service"), outlined below. When you create an Instagram account or use Instagram, you agree to these terms. The Facebook Terms of Service do not apply to this Service.

The Instagram Service is one of the Facebook Products, provided to you by Facebook, Inc. These Terms of Use therefore constitute an agreement between you and Facebook, Inc.

**ARBITRATION NOTICE: YOU AGREE THAT DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION AND YOU WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION. WE EXPLAIN SOME EXCEPTIONS AND HOW YOU CAN OPT OUT OF ARBITRATION BELOW.**

## The Instagram Service

We agree to provide you with the Instagram Service. The Service includes all of the Instagram products, features, applications, services, technologies, and software that we provide to advance Instagram's mission: To bring you closer to the people and things you love. The Service is made up of the following aspects:

- **Offering personalized opportunities to create, connect, communicate, discover, and share.**
  People are different. We want to strengthen your relationships through shared experiences you actually care about. So we build systems that try to understand who and what you and others care about, and use that information to help you create, find, join, and share in experiences that matter to you. Part of that is highlighting content, features, offers, and accounts you might be interested in, and offering ways for you to experience Instagram, based on things you and others do on and off Instagram.

- **Fostering a positive, inclusive, and safe environment.**
  We develop and use tools and offer resources to our community members that help to make their experiences positive and inclusive, including when we think they might

Plaintiff Exhibit A

  **Help Center**

use all the information we have including your information to try to keep our platform secure. We also may share information about misuse or harmful content with other Facebook Companies or law enforcement. Learn more in the **Data Policy**.

- **Developing and using technologies that help us consistently serve our growing community.**
  Organizing and analyzing information for our growing community is central to our Service. A big part of our Service is creating and using cutting-edge technologies that help us personalize, protect, and improve our Service on an incredibly large scale for a broad global community. Technologies like artificial intelligence and machine learning give us the power to apply complex processes across our Service. Automated technologies also help us ensure the functionality and integrity of our Service.

- **Providing consistent and seamless experiences across other Facebook Company Products.**
  Instagram is part of the Facebook Companies, which share technology, systems, insights, and information-including the information we have about you (learn more in the **Data Policy**) in order to provide services that are better, safer, and more secure. We also provide ways to interact across the Facebook Company Products that you use, and designed systems to achieve a seamless and consistent experience across the Facebook Company Products.

- **Ensuring access to our Service.**
  To operate our global Service, we must store and transfer data across our systems around the world, including outside of your country of residence. The use of this global infrastructure is necessary and essential to provide our Service. This infrastructure may be owned or operated by Facebook Inc., Facebook Ireland Limited, or their affiliates.

- **Connecting you with brands, products, and services in ways you care about.**
  We use data from Instagram and other Facebook Company Products, as well as from third-party partners, to show you ads, offers, and other sponsored content that we believe will be meaningful to you. And we try to make that content as relevant as all your other experiences on Instagram.

- **Research and innovation.**
  We use the information we have to study our Service and collaborate with others on research to make our Service better and contribute to the well-being of our community.

## How Our Service Is Funded

Instead of paying to use Instagram, by using the Service covered by these Terms, you acknowledge that we can show you ads that businesses and organizations pay us to promote

11/28/21, 10:06 AM
Terms of Use | Instagram Help Center

Plaintiff Exhibit A

 **Help Center**

We show you relevant and useful ads without telling advertisers who you are. We don't sell your personal data. We allow advertisers to tell us things like their business goal and the kind of audience they want to see their ads. We then show their ad to people who might be interested.

We also provide advertisers with reports about the performance of their ads to help them understand how people are interacting with their content on and off Instagram. For example, we provide general demographic and interest information to advertisers to help them better understand their audience. We don't share information that directly identifies you (information such as your name or email address that by itself can be used to contact you or identifies who you are) unless you give us specific permission. Learn more about how Instagram ads work here.

You may see branded content on Instagram posted by account holders who promote products or services based on a commercial relationship with the business partner mentioned in their content. You can learn more about this here.

## The Data Policy

Providing our Service requires collecting and using your information. The **Data Policy** explains how we collect, use, and share information across the **Facebook Products**. It also explains the many ways you can control your information, including in the **Instagram Privacy and Security Settings**. You must agree to the Data Policy to use Instagram.

## Your Commitments

In return for our commitment to provide the Service, we require you to make the below commitments to us.

**Who Can Use Instagram.** We want our Service to be as open and inclusive as possible, but we also want it to be safe, secure, and in accordance with the law. So, we need you to commit to a few restrictions in order to be part of the Instagram community.

- You must be at least 13 years old.

- You must not be prohibited from receiving any aspect of our Service under applicable laws or engaging in payments related Services if you are on an applicable denied party listing.

- We must not have previously disabled your account for violation of law or any of our policies.

- You must not be a convicted sex offender.

11/28/21, 10:06 AM

Plaintiff Exhibit A

 **Help Center**

- **You can't impersonate others or provide inaccurate information.**
  You don't have to disclose your identity on Instagram, but you must provide us with accurate and up to date information (including registration information), which may include providing personal data. Also, you may not impersonate someone or something you aren't, and you can't create an account for someone else unless you have their express permission.

- **You can't do anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose.**

- **You can't violate (or help or encourage others to violate) these Terms or our policies, including in particular the Instagram Community Guidelines, Facebook Platform Terms and Developer Policies, and Music Guidelines.**
  If you post branded content, you must comply with our Branded Content Policies, which require you to use our branded content tool. Learn how to report conduct or content in our **Help Center**.

- **You can't do anything to interfere with or impair the intended operation of the Service.**
  This includes misusing any reporting, dispute, or appeals channel, such as by making fraudulent or groundless reports or appeals.

- **You can't attempt to create accounts or access or collect information in unauthorized ways.**
  This includes creating accounts or collecting information in an automated way without our express permission.

- **You can't sell, license, or purchase any account or data obtained from us or our Service.**
  This includes attempts to buy, sell, or transfer any aspect of your account (including your username); solicit, collect, or use login credentials or badges of other users; or request or collect Instagram usernames, passwords, or misappropriate access tokens.

- **You can't post someone else's private or confidential information without permission or do anything that violates someone else's rights, including intellectual property rights (e.g., copyright infringement, trademark infringement, counterfeit, or pirated goods).**
  You may use someone else's works under exceptions or limitations to copyright and related rights under applicable law. You represent you own or have obtained all necessary rights to the content you post or share. Learn more, including how to report content that you think infringes your intellectual property rights, **here**.

- **You can't modify, translate, create derivative works of, or reverse engineer our products or their components.**

- **You can't use a domain name or URL in your username without our prior written consent.**

Plaintiff Exhibit A

 **Help Center**

- **We do not claim ownership of your content, but you grant us a license to use it.**
  Nothing is changing about your rights in your content. We do not claim ownership of
  your content that you post on or through the Service and you are free to share your
  content with anyone else, wherever you want. However, we need certain legal
  permissions from you (known as a "license") to provide the Service. When you share,
  post, or upload content that is covered by intellectual property rights (like photos or
  videos) on or in connection with our Service, you hereby grant to us a non-exclusive,
  royalty-free, transferable, sub-licensable, worldwide license to host, use, distribute,
  modify, run, copy, publicly perform or display, translate, and create derivative works
  of your content (consistent with your privacy and application settings). This license
  will end when your content is deleted from our systems. You can delete content
  individually or all at once by deleting your account. To learn more about how we use
  information, and how to control or delete your content, review the **Data Policy** and
  visit the **Instagram Help Center**.

- **Permission to use your username, profile picture, and information about your
  relationships and actions with accounts, ads, and sponsored content.**
  You give us permission to show your username, profile picture, and information
  about your actions (such as likes) or relationships (such as follows) next to or in
  connection with accounts, ads, offers, and other sponsored content that you follow
  or engage with that are displayed on Facebook Products, without any compensation
  to you. For example, we may show that you liked a sponsored post created by a
  brand that has paid us to display its ads on Instagram. As with actions on other
  content and follows of other accounts, actions on sponsored content and follows of
  sponsored accounts can be seen only by people who have permission to see that
  content or follow. We will also respect your ad settings. You can learn more **here**
  about your ad settings.

- **You agree that we can download and install updates to the Service on your device.**


## Additional Rights We Retain

- If you select a username or similar identifier for your account, we may change it if we
  believe it is appropriate or necessary (for example, if it infringes someone's
  intellectual property or impersonates another user).

- If you use content covered by intellectual property rights that we have and make
  available in our Service (for example, images, designs, videos, or sounds we provide
  that you add to content you create or share), we retain all rights to our content (but
  not yours).

- You can only use our intellectual property and trademarks or similar marks as
  expressly permitted by our **Brand Guidelines** or with our prior written permission.

11/28/21, 10:06 AM
Terms of Use | Instagram Help Center

Plaintiff Exhibit A

 **Help Center**

## Content Removal and Disabling or Terminating Your Account

- We can remove any content or information you share on the Service if we believe that it violates these Terms of Use, our policies (including our **Instagram Community Guidelines**), or we are permitted or required to do so by law. We can refuse to provide or stop providing all or part of the Service to you (including terminating or disabling your access to the Facebook Products and Facebook Company Products) immediately to protect our community or services, or if you create risk or legal exposure for us, violate these Terms of Use or our policies (including our **Instagram Community Guidelines**), if you repeatedly infringe other people's intellectual property rights, or where we are permitted or required to do so by law. We can also terminate or change the Service, remove or block content or information shared on our Service, or stop providing all or part of the Service if we determine that doing so is reasonably necessary to avoid or mitigate adverse legal or regulatory impacts on us. If you believe your account has been terminated in error, or you want to disable or permanently delete your account, consult our **Help Center**. When you request to delete content or your account, the deletion process will automatically begin no more than 30 days after your request. It may take up to 90 days to delete content after the deletion process begins. While the deletion process for such content is being undertaken, the content is no longer visible to other users, but remains subject to these Terms of Use and our Data Policy. After the content is deleted, it may take us up to another 90 days to remove it from backups and disaster recovery systems.

- Content will not be deleted within 90 days of the account deletion or content deletion process beginning in the following situations:

  - where your content has been used by others in accordance with this license and they have not deleted it (in which case this license will continue to apply until that content is deleted); or

  - where deletion within 90 days is not possible due to technical limitations of our systems, in which case, we will complete the deletion as soon as technically feasible; or

  - where deletion would restrict our ability to:

    - investigate or identify illegal activity or violations of our terms and policies (for example, to identify or investigate misuse of our products or systems);

    - protect the safety and security of our products, systems, and users;

    - comply with a legal obligation, such as the preservation of evidence; or

11/28/21, 10:06 AM
Terms of Use | Instagram Help Center

Plaintiff Exhibit A

 **Help Center**

- in which case, the content will be retained for no longer than is necessary for the purposes for which it has been retained (the exact duration will vary on a case-by-case basis).

- If you delete or we disable your account, these Terms shall terminate as an agreement between you and us, but this section and the section below called "Our Agreement and What Happens if We Disagree" will still apply even after your account is terminated, disabled, or deleted.

## Our Agreement and What Happens if We Disagree

**Our Agreement.**

- Your use of music on the Service is also subject to our Music Guidelines, and your use of our API is subject to our Facebook Platform Terms and Developer Policies. If you use certain other features or related services, you will be provided with an opportunity to agree to additional terms that will also become a part of our agreement. For example, if you use payment features, you will be asked to agree to the **Community Payment Terms**. If any of those terms conflict with this agreement, those other terms will govern.

- If any aspect of this agreement is unenforceable, the rest will remain in effect.

- Any amendment or waiver to our agreement must be in writing and signed by us. If we fail to enforce any aspect of this agreement, it will not be a waiver.

- We reserve all rights not expressly granted to you.

**Who Has Rights Under this Agreement.**

- Our past, present, and future affiliates and agents, including Instagram LLC, can invoke our rights under this agreement in the event they become involved in a dispute. Otherwise, this agreement does not give rights to any third parties.

- You cannot transfer your rights or obligations under this agreement without our consent.

- Our rights and obligations can be assigned to others. For example, this could occur if our ownership changes (as in a merger, acquisition, or sale of assets) or by law.

**Who Is Responsible if Something Happens.**

- Our Service is provided "as is," and we can't guarantee it will be safe and secure or will work perfectly all the time. TO THE EXTENT PERMITTED BY LAW, WE ALSO DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE

11/28/21, 10:06 AM                          Terms of Use | Instagram Help Center

Plaintiff Exhibit A

 **Help Center**

- We also don't control what people and others do or say, and we aren't responsible for their (or your) actions or conduct (whether online or offline) or content (including unlawful or objectionable content). We also aren't responsible for services and features offered by other people or companies, even if you access them through our Service.

- Our responsibility for anything that happens on the Service (also called "liability") is limited as much as the law will allow. If there is an issue with our Service, we can't know what all the possible impacts might be. You agree that we won't be responsible ("liable") for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms, even if we know they are possible. This includes when we delete your content, information, or account. Our aggregate liability arising out of or relating to these Terms will not exceed the greater of $100 or the amount you have paid us in the past twelve months.

- You agree to defend (at our request), indemnify and hold us harmless from and against any claims, liabilities, damages, losses, and expenses, including without limitation, reasonable attorney's fees and costs, arising out of or in any way connected with these Terms or your use of the Service. You will cooperate as required by us in the defense of any claim. We reserve the right to assume the exclusive defense and control of any matter subject to indemnification by you, and you will not in any event settle any claim without our prior written consent.

**How We Will Handle Disputes.**

- Except as provided below, **you and we agree that any cause of action, legal claim, or dispute between you and us arising out of or related to these Terms or Instagram ("claim(s)") must be resolved by arbitration on an individual basis. Class actions and class arbitrations are not permitted**; you and we may bring a claim only on your own behalf and cannot seek relief that would affect other Instagram users. If there is a final judicial determination that any particular claim (or a request for particular relief) cannot be arbitrated in accordance with this provision's limitations, then only that claim (or only that request for relief) may be brought in court. All other claims (or requests for relief) remain subject to this provision.

- Instead of using arbitration, you or we can bring claims in your local "small claims" court, if the rules of that court will allow it. If you don't bring your claims in small claims court (or if you or we appeal a small claims court judgment to a court of general jurisdiction), then the claims must be resolved by binding, individual arbitration. The American Arbitration Association will administer all arbitrations under its Consumer Arbitration Rules. **You and we expressly waive a trial by jury.**

  The following claims don't have to be arbitrated and may be brought in court: disputes related to intellectual property (like copyrights and trademarks), violations of our Platform Policy, or efforts to interfere with the Service or engage with the Service in unauthorized ways (for example, automated ways). In addition, issues

Plaintiff Exhibit A

 **Help Center**

This arbitration provision is governed by the Federal Arbitration Act.

You can opt out of this provision within 30 days of the date that you agreed to these Terms. To opt out, you must send your name, residence address, username, email address or phone number you use for your Instagram account, and a clear statement that you want to opt out of this arbitration agreement, and you must send them here: Facebook, Inc. ATTN: Instagram Arbitration Opt-out, 1601 Willow Rd., Menlo Park, CA 94025.

- Before you commence arbitration of a claim, you must provide us with a written Notice of Dispute that includes your name, residence address, username, email address or phone number you use for your Instagram account, a detailed description of the dispute, and the relief you seek. Any Notice of Dispute you send to us should be mailed to Facebook, Inc., ATTN: Instagram Arbitration Filing, 1601 Willow Rd. Menlo Park, CA 94025. Before we commence arbitration, we will send you a Notice of Dispute to the email address you use with your Instagram account, or other appropriate means. If we are unable to resolve a dispute within thirty (30) days after the Notice of Dispute is received, you or we may commence arbitration.

- We will pay all arbitration filing fees, administration and hearing costs, and arbitrator fees for any arbitration we bring or if your claims seek less than $75,000 and you timely provided us with a Notice of Dispute. For all other claims, the costs and fees of arbitration shall be allocated in accordance with the arbitration provider's rules, including rules regarding frivolous or improper claims.

- For any claim that is not arbitrated or resolved in small claims court, you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.

- The laws of the State of California, to the extent not preempted by or inconsistent with federal law, will govern these Terms and any claim, without regard to conflict of law provisions.

**Unsolicited Material.**

We always appreciate feedback or other suggestions, but may use them without any restrictions or obligation to compensate you for them, and are under no obligation to keep them confidential.

## Updating These Terms

We may change our Service and policies, and we may need to make changes to these Terms so that they accurately reflect our Service and policies. Unless otherwise required by law, we will notify you (for example, through our Service) before we make changes to these Terms

11/28/21, 10:06 AM                                                                    Terms of Use | Instagram Help Center

Plaintiff Exhibit A

**Help Center**

~~those of any updated Terms, you can delete your account, here.~~

Revised: December 20, 2020

Was this helpful?

Yes                                                    No

## Related Articles

**Instagram Badges Purchase Terms**

**What can I do if my Instagram account has been disabled?**

**How can I make sure the content I post to Instagram doesn't violate trademark law?**

**How can I get an image of my child removed from Instagram?**

**How can I make sure the content I post to Instagram doesn't violate copyright law?**

**Why can't I search for certain hashtags on Instagram?**

© 2021 Meta

**English (US)**

About Us

API

Jobs

Plaintiff Exhibit A

 **Help Center**

from ꝏ **Meta**

11/28/21, 1:50 PM
Trademark Electronic Search System (TESS)



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sun Nov 28 03:32:21 EST 2021*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | **KAKEYTAUGHTME** |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Entertainment services, namely, conducting parties for the purpose of dating and social introduction for adults. FIRST USE: 20181025. FIRST USE IN COMMERCE: 20200102 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 01.15.25 - Coal ; Dust ; Light rays ; Liquids, spilling ; Pouring liquids ; Sand ; Spilling liquids<br>02.11.04 - Human lips or mouths<br>02.11.25 - Blood vessels, human ; Brain, human ; Buttocks, human ; Human, other parts of the body ; Intestines, human ; Lungs, human ; Nerves, human ; Nose, human ; Spine, human ; Tongue, human |
| **Serial Number** | 88694236 |
| **Filing Date** | November 15, 2019 |
| **Current Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | November 24, 2020 |
| **Owner** | (APPLICANT) Welch, Tiara AKA Kakey INDIVIDUAL UNITED STATES Ste. 209 110 Painters Mill Road Owings Mills MARYLAND 21117 |
| **Description of Mark** | The colors dark pink, pink, light pink, purple, dark purple, black, white and gray is/are claimed as a feature of the mark. The mark consists of the design of an open female mouth outlined in black with purple and dark purple lips having pink, light pink, dark pink and white shading and white teeth; a large dark pink and pink tongue outlined in black having light pink, white and gray shading protrudes from the mouth; stray black dots appear on the tongue and a black curved line appears down the middle of the tongue; white saliva outlined in black with gray shading drips down and off of the protruding tongue; the wording "KakeyTaughtMe" appears in black and outlined with a light pink hue below the dripping saliva. |
| **Type of Mark** | SERVICE MARK |

11/28/21, 1:50 PM                                     Trademark Electronic Search System (TESS)

**Register**    PRINCIPAL

**Other Data**  The name "KAKEY" identifies Tiara Welch, a living individual whose consent is of record.

**Live/Dead
Indicator**    LIVE

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

Plaintiff. Exhibit C                                    Johnson v. Facebook Inc.

**JIMI KOLAWOLE**

| | |
|---|---|
| **From:** | Tiara Newman Johnson <tnewmanj22@gmail.com> |
| **Sent:** | Thursday, November 18, 2021 3:29 PM |
| **To:** | JIMI KOLAWOLE |
| **Subject:** | These are the Pages that are NOT ME |



Plaintiff. Exhibit C                                    Johnson v. Facebook Inc.



Plaintiff. Exhibit C                                    Johnson v. Facebook Inc.



Plaintiff. Exhibit C                                    Johnson v. Facebook Inc.



Plaintiff. Exhibit C                                    Johnson v. Facebook Inc.



Plaintiff. Exhibit C                                  Johnson v. Facebook Inc.



Plaintiff. Exhibit C                              Johnson v. Facebook Inc.



Plaintiff. Exhibit C                                      Johnson v. Facebook Inc.



Johnson v. Facebook Inc.

lickmykakez147

# lick.mykakezfanpage

# lickmykakez02

# lickmykakez69



# lickmykakez_investment

lickmykakez 😏 😀

Plaintiff. Exhibit C                                    Johnson v. Facebook Inc.



# lickmykakez123

kimberly williams
Followed by tr_acey5895



# lic.kmykakez



# lickmykakez111113



# lick.mykakez



# lickmykakez0

Plaintiff. Exhibit C  Johnson v. Facebook Inc.



## lickmykakez038
lickmykakez03



## lickmy_kakez2021
lick my kakez



## lickmykakez211
Tiara 🖤 Formerly known As



## lickmykakez22
Kakey Back Up Page



Plaintiff. Exhibit C                              Johnson v. Facebook Inc.



# babekakey
Kakey B



# lick.makakez
Tiara kakey



# kakey6969
Kakey



# kakey.2
Kakeyy



# officialrealkakey

# lickmykake.z
lickmyKakez

# lickmykakez16
Lickmykakez

# lickmykakez029
Lickmykakez02

# lickmykakez7
lickmykakez

# lickmykakez147

Plaintiff. Exhibit C                                    Johnson v. Facebook Inc.



## b.k.kakey
B.K.A KAKEY



## kakeyofficialfanpage
KAKEY



## real.kakey
Real Kakey



## _realkakey
Kakey



## kakey b.k.a

## lickmykakezofficial_
Kakez Lick

## lickmykakez86
lickmykakez

## lickmykakez8
Lickmykakez

## lickmykakezz_
Fan Page

## lickmykakez101

Plaintiff. Exhibit C

Johnson v. Facebook Inc.

Sent from my iPhone

Plaintiff. Exhibit D                          Johnson v. Facebook Inc.

John Doe informing Plaintiff of how her Instagram Account was taken down



Plaintiff. Exhibit D                                        Johnson v. Facebook Inc.

Plaintiff being informed that someone paid for her Instagram account



Obn brandon

I was paid $3000 by this girl to take down her page bro I didn't know you knew her

Ok can you get her back up?

I banned her account using verified accounts. She has to pay 2500 to get it back through a Facebook rep I got

I will Text her now to let her know

   



# CSC

## Notice of Service of Process

null / ALL
Transmittal Number: 24172540
Date Processed: 12/08/2021

**Primary Contact:**
Elizabeth Jarvis
Facebook, Inc.
Attn: Legal Department
1601 Willow Road
Menlo Park, CA 94025-1452

**Electronic copy provided to:**
Cynthia Velazquez
Holly Gaudreau
Abimbola Oladokun
Brian Hennessy
Samantha Young
Jeannie Farren
Ian Chen
Marcia Burati
Effie Zaharioudakis
Mario Freire
Third Party Process
Gina Moon
Logan Scott
Jaia Rovaris
Mike Duffey
Nikki Sokol
Laura Diesman
Alyona Foertsch
Aline Bellini Pfeifer
Raissa Abreu
Lana Shatnenko

| | |
|---|---|
| **Entity:** | Facebook, Inc.<br>Entity ID Number  2295815 |
| **Entity Served:** | Facebook Inc |
| **Title of Action:** | Tiara N. Johnson vs. Facbook Inc |
| **Matter Name/ID:** | Tiara N. Johnson vs. Facbook Inc (11803957) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Harford County Circuit Court, MD |
| **Case/Reference No:** | C-12-CV-21-000726 |
| **Jurisdiction Served:** | Maryland |
| **Date Served on CSC:** | 12/08/2021 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | Kolawole Law Firm LLC<br>443-546-8146 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882  |  sop@cscglobal.com