IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| Tiara N. Johnson<br>4740 Willinston Street<br>Baltimore, MD 21229 | * | In the Circuit Court |
| | * | For |
| Plaintiff | * | Harford County |
| vs. | * | |
| | * | |
| Facbook Inc.,<br>Serve on:<br>CSC-Lawyers Inc. Service Co.<br>7 St. Paul Street<br>Suite 820<br>Baltimore MD 21202 | * | Case No.: 22-CV-00033-RDB |
| | * | |
| | * | |
| | * | |
| John Doe | * | |
| Defendant | * | |

# FIRST AMENDED COMPLAINT

Comes Now, Tiara N. Johnson, Plaintiff, by and through her attorneys, Jimi Kolawole, and Kolawole Law Firm LLC, file this Complaint against Facebook Inc. (now known as Meta Inc.) and in support thereof state as follows:

1. Plaintiff is the owner and operator of the verified Instagram Account (@LICKMYKAKEZ) where Plaintiff is a purveyor of fine adult toys and has gained over 2.8 million followers, customers, and clients who regularly patronize her products on Facebook and Instagram.

2. Defendant, Facebook Inc., is the owner and operator of the app known as Instagram. Facebook is a corporation registered to do business in the State of Maryland. It is engaged in the business of software development and Instagram is one of its products.

3. Plaintiffs' claims arise from an act enumerated in" the Maryland long-arm jurisdiction statute. Md. Code Ann., Cts. & Jud. Proc. § 6–103(a). Maryland's statute provides: A court may exercise personal jurisdiction over a person, who directly or by an agent:

    a. Transacts any business or performs any character of work or service in the State;
    b. Contracts to supply goods, food, services, or manufactured products in the State;
    c. Causes tortious injury in the State by an act or omission in the State;
    d. Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course

       of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

    e. Has an interest in, uses, or possesses real property in the State; or

    f. Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

4. Facebook is subject to the personal and specific jurisdiction of the Court. Facebook "derives substantial revenue from goods and services used or consumed in the State of Maryland." Md. Code Ann., Cts. & Jud. Proc. § 6–103(a)

5. Facebook owns interests in, uses, or possesses real property in the State of Maryland. Facebook owns real estate, business, and personal property in the State of Maryland. Facebook owns properties in Cumberland, Allegany County, Anne Arundel County, Baltimore City, Baltimore County, Cecil County, Takoma Park, Montgomery County, Washington County, and Hagerstown. See Plaintiff Exhibit E.

6. In Maryland, every business entity must file a report indicating the business real estate and business property. Exhibit E demonstrates that Facebook has substantial real estate, business, employees, and physical facilities in the State of Maryland. In 2020, Facebook paid approximately $500,000.00 in real estate, business, and personal property tax assessment to the State of Maryland.

7. Further, Facebook is the largest social networking platform in this Federal District. Each day, thousands and thousands of consumers within this District access Facebook and its family of products, including Facebook Business, Instagram, Messenger, and WhatsApp. Facebook also regularly directs commercial activity to this District by serving directed and targeted advertisements to consumers within this District. Facebook derives substantial revenue from its commercial activities in this District. Its contacts in this District are regular, constant, and of a substantial character. Facebook's activities are not isolated or sporadic.

8. Defendant, John Doe, is a person whose identity is unknown but known to Defendant, Facebook Inc. The identification of John Doe will be provided upon information from Facebook Inc.

9. Instagram is a free social networking service built around sharing photos and videos. It launched in October 2010 on iPhone first and became available on Android in April 2012. Facebook purchased the service in April 2012 and has owned it since.

10. Like most social media apps, Instagram allows you to follow users that you're interested in. This creates a feed on your homepage, showing recent posts from everyone you follow. You can like posts, comment on them, and share them with other people.

11. In addition to posting regular photos and videos, which stay on your page permanently, Instagram also supports stories. Stories allow you to post many photos and video clips in a series. Anyone can view these for 24 hours, after which they expire.

12. That's not all the options for video; Instagram offers IGTV and Reels, as well. Reels are a lot like what you'll find on TikTok: short video clips that are easier to share and find than stories. And IGTV is for longer-form video that you want to keep on your profile.

13. Aside from all this, Instagram also supports direct messaging so you can chat with friends in private. You can also explore profiles to see what else you might have interest in.

14. Plaintiff's Instagram account was a verified Instagram account with over 2.8 million followers. Due to Plaintiff's significant followers, Plaintiff enjoyed a substantial revenue of about ten thousand dollars per week from the sales of her products and inventory. See Exhibits F, G, and H.

15. In addition, Plaintiff served as an ambassador, promoter, and influencer of a myriads of products. See Exhibit F.

16. Plaintiff's Instagram was a business account. Plaintiff purchased advertisement from Facebook for her Instagram Account. See Exhibit I. And most of Plaintiff's sales were through Instagram and Facebook sale applications. Id.

17. Plaintiff was under agreement with 2 Trill Promotions, LLC for the promotions of Plaintiff, her products as well as 2 Trill's products. Due to the termination of Plaintiff's account, this Agreement was disrupted. See Exhibit H.

18. Plaintiff employed 3 different individuals who were under employment contracts with Plaintiff. These employment contracts were terminated due to the termination of Plaintiff's account.

19. Plaintiff was under agreement, contract, or relationship with Instagram accounts rtorriee, amoy_brown456, naynaybosslady, realsexbarbie, judyyymarie, damnitsdimes, iam_honeydoll, slimisadrug, ninanyne, teresalavaebackup, zeunnarosebeenblessed, lyfesreal_ru_, naynaybosslady to promote and influence the respective products for each Instagram handle. Each of these Instagram account paid Plaintiff for promotion of their products. See Exhibit G. Plaintiff Instagram Sales.

## Count I
## Breach of Contract

20. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.
21. Sometime in 2011, Plaintiff downloaded the Instagram app and created an account on Instagram.
22. Sometime in the year 2011, Plaintiff downloaded the Instagram App. Facebook purchased Instagram in February of 2012 and thereafter, Facebook Inc. entered into an agreement with Plaintiff to provide Plaintiff the Instagram Service, an Instagram account for free in exchange, for showing Plaintiff advertisements and a limited use of Plaintiff's online data and behavior. See Exhibit A Instagram Terms of Use.
23. The Instagram Terms of Use is a contractual agreement between Plaintiff and Defendant. The Agreement provides that "we [Facebook] agree to provide you with the Instagram service. The Service includes all of the Instagram products, features, applications, services, technologies, and software that we provide to advance Instagram's mission." Id.
24. The terms of the contract require that
    a. Plaintiff is older than 13 years old; Plaintiff must not be prohibited from receiving any aspect of Facebook's service under applicable laws or engaging in payments related Services; Plaintiff's account has not been previously disabled for violation of low or any of Facebook's policies; Plaintiff is not a convicted sex offender; Plaintiff cannot impersonate or provide inaccurate information; Plaintiff cannot do anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose; Plaintiff cannot violate (or help or encourage others to violate)these Terms or Facebook's policies including in particular the Instagram Community Guidelines, Facebook Platform Terms and Developer Policies, and Music Guidelines; See Exhibit A for additional requirements.
25. Under the terms of this Agreement,
    a. We [Facebook] can remove any content or information you share on the Service if we believe that it violates these Terms of Use, our policies (including our Instagram Community Guidelines), or we are permitted or required to do so by law.
    b. We [Facebook] can refuse to provide or stop providing all or part of the Service to you (including terminating or disabling your access to the Facebook Products and Facebook Company Products) immediately to protect our community or services, or

if you create risk or legal exposure for us, violate these Terms of Use or our policies (including our Instagram Community Guidelines), if you repeatedly infringe other people's intellectual property rights, or where we are permitted or required to do so by law.

c. We [Facebook] can also terminate or change the Service, remove or block content or information shared on our Service, or stop providing all or part of the Service if we determine that doing so is reasonably necessary to avoid or mitigate adverse legal or regulatory impacts on us.

d. If you believe your account has been terminated in error, or you want to disable or permanently delete your account, consult our Help Center.

26. On or before January 1, 2020, Plaintiff started a business under the name KAKEYTAUGHTME selling adult toys and products. Plaintiff promoted her business on Instagram by purchasing Facebook and Instagram advertisement.

27. Plaintiff is the owner of the trademark KAKEYTAUGHTME with United States Patent & Trademark Office Application Number 88694236. See Exhibit B.

28. Plaintiff's business was a hit with her fans and her Instagram followers grew to 2.8 million followers who loved Plaintiff and purchased from her. Plaintiff was making sales of approximately $10,000 per week from the sale of her products. In addition, Plaintiff was earning from serving as an ambassador or influencer to promote hair, clothes, and making videos inviting her followers to use different products. See Exhibit F, G, and H.

29. On or about July 1, 2021, Facebook breached its obligation to provide the Instagram Service when Facebook disabled Plaintiff's account and interrupted Plaintiff's business and her ability to communicate with her over 2.8 million followers, customers, and clients.

30. Facebook has failed to communicate with Plaintiff on why her account was disabled or blocked. All efforts to reach Facebook via its Help Center has been abortive. Plaintiff did not violate any term of use.

31. Following Facebook disabling Plaintiff's account, Plaintiff was informed that a John Doe was paid to have her account suspended or "bring her account down" and after Facebook's action, John Doe notified others.



See Exhibit D.

32. Plaintiff contacted John Doe who informed her that stated that Facebook will not respond to Plaintiff's responses. However, John Doe promised that he can get a Facebook Pro to reactivate Plaintiff's account for $3000. A desperate Plaintiff paid but much to no surprise, John Doe blocked Plaintiff and subsequently disappeared.

33. Since the suspension of Plaintiff's Instagram account, Facebook has permitted new false and imitation accounts that claim to be Plaintiff and violating Plaintiff's trademark. See Exhibit C.

34. Plaintiff has incurred a loss of seventy-five thousand dollars because of the breach by Facebook Inc.

WHEREFORE, Plaintiff, Tiara Johnson, demands judgment against Facebook Inc. in the amount of seventy -five thousand dollars plus interest and costs.

## Count II
## Tortious Interference with Contractual Relations.

35. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.
36. On or before July 1, 2020, Plaintiff entered an agreement with Facebook Inc in exchange for the use of Facebook's Instagram application. A copy of Instagram's Terms of Use is attached and marked as Exhibit A.
37. Plaintiff operated an Instagram account @LICKMYKAKEZ where she was a purveyor of fine adult paraphernalia. Plaintiff's Instagram account was a VERIFIED account with over 2.8 million followers. Due to Plaintiff's significant followers, Plaintiff enjoyed a substantial revenue of about ten thousand dollars per week from the sales of her inventory.
38. Defendant, John Doe, was aware of Plaintiff's existing contract with Facebook Inc. John Doe is an Instagram user, and every user of Instagram is required to enter into an agreement to use the app.
39. On or before July 1, 2021, and without legal justification, John Doe intentionally and improperly interfered with Plaintiff's contract with Facebook Inc by relentlessly filing false report through his own accounts and other Instagram account under his control with Facebook with the intent of getting Facebook to suspend or disable Plaintiff's account. John Doe was aware that by filing false report with Facebook, Facebook would suspend or disable Plaintiff's account.
40. Upon information and belief, John Doe was paid by Plaintiff's competitor to bring down Plaintiff's account. John Doe confirmed as such in his correspondence with Plaintiff.
41. Further, John Doe was aware that there is no human intervention when Facebook suspends or disable an account and Plaintiff would be unable to reach a human to review the allege false filings.
42. As a result of John Doe's false filings, Facebook suspended Plaintiff's account without legal justification on July 1, 2021, thereby making Facebook breach its contract with Plaintiff as the suspension was without any legal justification.
43. As a result of John Doe's conduct, Plaintiff has suffered and continues to suffer lost profits and other consequential damages.

WHEREFORE, Plaintiff, Tiara Johnson, demands judgment against John Doe in the amount of seventy-five thousand dollars plus interest and costs.

## Count III
### Tortious Interference with Prospective Relations.

44. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.
45. Plaintiff operated an Instagram account @LICKMYKAKEZ where she was a purveyor of fine adult paraphernalia. Plaintiff's Instagram account was a verified account with over 2.8 million followers. Due to Plaintiff's significant followers, Plaintiff enjoyed a substantial revenue of about ten thousand dollars per week from the sales of her inventory. See Exhibits F, G, and H.
46. Plaintiff purchased advertisement from Facebook and a majority of Plaintiff's sales were through Instagram and Facebook sale applications.
47. On or about July 1, 2021, Facebook Inc disabled or suspended Plaintiff's Instagram account with the intention of ending Plaintiff's account and causing customers to cease dealing with Plaintiff. Facebook's action was initiated by John Doe's false report of Plaintiff's activities alleging that Plaintiff's postings violated Instagram's terms of use.
48. Facebook's termination of Plaintiff's account was an intentional and improper conduct. Facebook either directed an employee to disable Plaintiff's account or Facebook's algorithm disable Plaintiff's account. Regardless, Facebook's termination of Plaintiff's account was without any legal cause or contractual justification. Facebook failed to provide Plaintiff with a reasonable opportunity to respond to false filings, if any existed.
49. Facebooks actions interfered with Plaintiff's contract, agreement, and relationships. Plaintiff was under employment contract with her employees. Plaintiff was under contract with 2 Trill Promotions LLC. Facebook's actions caused a disruption to these contracts and relationships.
50. Plaintiff was under agreement, contract, or relationship with Instagram accounts rtorriee, amoy_brown456, naynaybosslady, realsexbarbie, judyyymarie, damnitsdimes, iam_honeydoll, slimisadrug, ninanyne, teresalavaebackup, zeunnarosebeenblessed, lyfesreal_ru_, naynaybosslady to promote and influence the respective products for each Instagram handle.
51. Plaintiff's agreement, contract, or relationship with Instagram accounts rtorriee, amoy_brown456, naynaybosslady, realsexbarbie, judyyymarie, damnitsdimes, iam_honeydoll,

slimisadrug, ninanyne, teresalavaebackup, zeunnarosebeenblessed, lyfesreal_ru_, naynaybosslady were current and prospective relationships that ceased due to Plaintiff's actions.

52. Facebook was aware that Plaintiff's account was a business account and its interference with such business account would reasonably infer with Plaintiff's business and relationships.

53. The conduct of Facebook was intentional, willful, and calculated to cause damage to Plaintiff's lawful business. The conduct of Facebook was perpetrated with the intentional and improper purpose of causing damage and was without justifiable cause.

54. As a result of Facebook's conduct and actions, Plaintiff has suffered and will continue to suffer lost profits, other consequential damages, and harm to reputation.

WHEREFORE, Plaintiff, Tiara Johnson, demands judgment against Facebook Inc. in the amount of seventy-five thousand dollars plus interest and costs.

## Count IV
## Federal Trademark Infringement

55. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

56. Plaintiff operated an Instagram account @LICKMYKAKEZ where she was a purveyor of fine adult paraphernalia. Plaintiff's Instagram account was a VERIFIED account with over 2.8 million followers. Due to Plaintiff's significant followers, Plaintiff enjoyed a substantial revenue of about ten thousand dollars per week from the sales of her inventory.

57. Plaintiff is the owner of the trademark KAKEYTAUGHTME with United States Patent & Trademark Office Application Number 88694236. See Exhibit B.

58. Pursuant to the suspension of Plaintiff's Instagram verified account, there has been a proliferation of imitation Instagram accounts such as KAKEYOFFICIAL, KAKEY.B.K.A, _LICKMYKAKEY._, TIARA_KAKEY, KAKEY_PRIVATE101, LICKMYKAKEZ111113, LICKMYKAKEZ123. See Exhibit C. Some of these accounts use Plaintiff's name Tiara in their profile to increase the likelihood of confusion of consumers.

59. KAKEYOFFICIAL, KAKEY.B.K.A, _LICKMYKAKEY._, TIARA_KAKEY, KAKEY_PRIVATE101, LICKMYKAKEZ111113, LICKMYKAKEZ123 are business accounts that Facebook/Instagram receive funds in exchange advertisement of these accounts.

60. Facebook is aware that these Instagram accounts are creating a likelihood of confusion and Facebook has turned a blind eye to these accounts. Facebook is liable for secondary infringement.
61. By permitting third parties to use another's mark that imitate Plaintiff's mark, and receiving advertisement revenue from these imitation accounts and marks, Facebook is using in commerce, directly or indirectly, Plaintiff's mark.
62. Facebook/Instagram's use of a confusingly similar imitation of KAKEYTAUGHTME mark is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Facebook's goods and services are manufactured or distributed by Plaintiff, or are associated or connected with Plaintiff, or have the sponsorship, endorsement, or approval of Plaintiff.
63. Facebook/Instagram's use of confusingly similar mark to Plaintiff's federally registered marks in violation of 15 U.S.C. § 1114. Facebook's activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by KAKEYTAUGHTME mark, for which Plaintiff has no adequate remedy at law.
64. Facebook/Instagram's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's KAKEYTAUGHTME mark to Plaintiff's great and irreparable harm.
65. Facebook/Instagram's caused and is likely to continue causing substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Facebook's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C.§§ 1114, 1116, and 1117.

**Count V**

**Federal Unfair Competition**

66. Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.
67. Plaintiff operated the Instagram account @LICKMYKAKEZ where she was a purveyor of fine adult paraphernalia. Plaintiff's Instagram account was a VERIFIED Instagram account with over 2.8 million followers. Due to Plaintiff's significant followers, Plaintiff enjoyed a substantial revenue of about ten thousand dollars per week from the sales of her inventory.

68. Plaintiff is the owner of the trademark KAKEYTAUGHTME with United States Patent & Trademark Office Application Number 88694236.  <u>See Exhibit B.</u>
69. Pursuant to the suspension of Plaintiff's Instagram verified account, there has been a proliferation of imitation Instagram accounts such as KAKEYOFFICIAL, KAKEY.B.K.A, _LICKMYKAKEY._, TIARA_KAKEY, KAKEY_PRIVATE101, LICKMYKAKEZ111113, LICKMYKAKEZ123.  See Exhibit C.  These accounts also use Plaintiff's first name Tiara in the profile to further confuse users.
70. Facebook/Instagram's has made false representations, false descriptions, and false designations of, on, or in connection with its goods in violation of 15 U.S.C. § 1125(a). Facebook/Instagram's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by Plaintiff's KAKEYTAUGHTME mark, for which Plaintiff has no adequate remedy at law.
71. Facebook/Instagram's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's KAKEYTAUGHTME mark to the great and irreparable injury of adidas.
72. Facebook/Instagram's conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiff.  Plaintiff is entitled to injunctive relief and to recover Plaintiff's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

WHEREFORE, Plaintiff prays that:
1. Facebook and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Facebook, or in concert or participation with Facebook, and each of them, be enjoined from:
    a. permitting any Instagram user to use any handle or account name that will create a likelihood of confusion with Plaintiff's KAKEYTAUGHTME mark.
    b. advertising, marketing, promoting, offering for sale, distributing, or selling goods or services using the mark KAKEYTAUGHTME or any other mark that will create a likelihood of confusion.

- c. using the KAKEYTAUGHTME mark or any other copy, reproduction, colorable imitation, or simulation of Plaintiff's KAKEYTAUGHTME mark on or in connection with any goods and services.
- d. using any trademark, account handle, name, logo, design, or source designation of any kind on or in connection with any Facebook/Instagram account user's goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiff, or are sponsored or authorized by adidas, or are in any way connected or related to Plaintiff.

2. Facebook be compelled to account to Plaintiff for any and all profits derived by Facebook/Instagram from the sale of goods or services using marks infringing on Plaintiff's mark.
3. Plaintiff be awarded all damages caused by the acts forming the basis of this Complaint.
4. Based on Facebook's knowing and intentional use of a confusingly similar imitation of the Plaintiff's KAKEYTAUGHTME mark, the damages awarded be trebled and the award of Facebook's profits be enhanced as provided for by 15 U.S.C. § 1117(a).
5. Facebook/Instagram be required to pay to Plaintiff the costs and reasonable attorneys' fees incurred by Plaintiff in this action pursuant to 15 U.S.C. § 1117(a) and the state statutes cited in this Complaint.
6. Based on Facebook/Instagram's willful and deliberate infringement, and to deter such conduct in the future, Plaintiff be awarded punitive damages.
7. Plaintiff be awarded prejudgment and post-judgment interest on all monetary awards; and
8. Plaintiff be granted such other and further relief as the Court may deem just.

Respectfully submitted,

/s/ Kolawole Onifade

Kolawole Onifade, Esq.(21822)
Kolawole Law Firm LLC
7517 Cedar Grove Lane,
Elkridge, MD. 21075
ksonifade@justklf.com
Fax: 240 713 3242