# AGREEMENT

This Agreement (the **"Agreement"**) is entered into on <u>December 22, 2020</u> (the **"Effective Date"**), by and between <u>Tiara Newman Johnson a/k/a Kakey,</u> with an address of <u>308 n twin lakes blvd Newark DE</u> (the **"Partner"**) and 2 Trill Promotions, LLC, with an address of c/o The Austin Law Firm, PC, 204 Taylor Street, 2nd Floor, Orange, NJ 07050 (the **"Company"**), collectively and individually "the **Parties**", or "**Party**" respectively.

## Background

WHEREAS, Company has developed electronic platforms which is accessible to the public and used to provide promotional services for third parties (the "**Clients**") including but not limited to, promoting music by third party independent recording artists and any other products and services as the Parties may mutually agree. In the case of music by third party recording artists, such promotional services will include placement of branded "mixtape" series, "drops" from celebrity personalities, and Instagram "stories (collectively the "**Platform**"), and other streaming platforms including the Portal (as defined below).

WHEREAS, Partner wishes to use its celebrity and/or social media profile to promote, offer and sell Company's promotional services through the use of the Platform via Partner's social media accounts, including but not limited to Partner's Instagram pages (the "**Portal**").

WHEREAS, Partner desires to engage Company to be its representative to perform the "Services" detailed and defined in paragraph 2 of this Agreement on Partner's behalf;

WHEREAS, Company agrees to represent Partner and perform the Services requested herein;

NOW, therefore, in consideration of the promises and conditions contained herein, the Parties agree as follows:

**1.     In General**. Partner hereby grants to Company: a) a limited, non-exclusive, non-transferable license to use the Portal during the Term, solely for the operation of the Platform in connection with the Services as defined and set forth below; and b) a non-exclusive (except as otherwise set forth herein), worldwide right and license to use Partner's name, together with renderings of Partner's, image, and likeness, and all attributes of Partner's personality and appearance (collectively, the "**Likeness**"), including any right of publicity, in connection with the creation, development, operation, promotion, distribution, and sales of the Services. Company will not use the Likeness as a domain name, social media account name, or corporate name, or in any other manner without the prior written consent of Partner.

1.1 The Portal shall be branded under the name of Partner and shall be accessible to the public under a URL designated by Partner. The name, trademark, trade name, trade dress, designs and logos of Company (the "**Marks**") shall not appear on the Partner URL, unless mutually agreed by the Parties in advance in a separate signed written authorization. No license, express or implied, is granted to Partner for any of the Marks under this Agreement.

1.2 Partner shall not (i) enter into agreements for the use of the Platform, or sublicense or invite any other person to use the Platform, except pursuant to the normal operation of the Portal in accordance with this Agreement; (iii) use the name or proprietary logo(s) of Company without Company's prior written consent; (iv) make representations regarding the Platform for any purpose other than the operation of the Portal in connection with the Services; (v) interfere in any manner with the use of Platform by Company or its other customers; or (vi) without giving at least thirty (30) days' notice to Company, commence development of, or promote another electronic platform for the purpose of offering such electronic platform to third parties, in competition with the Platform.

2.    **Services.** Partner requests and Company agrees to perform the following specific Services (the "**Services**"):

   a) Company will contact the Partner's social media followers via the Portal through posts and direct messages, and will reply to comments or messages in Partner's stead solely for the purposes of promoting, offering and selling Company's promotional services. For the avoidance of doubt, it is the Parties' intention that Clients and other third parties with whom Company or Partner shall communicate via the Portal for purposes of the Services be convinced that they are in communication with the Partner. Notwithstanding the foregoing, Company warrants and represents that Company shall not post anything on Partner's social media pages without Partner's prior written consent.

   b) Company will negotiate and enter into agreements with Clients on Partner's behalf (the "**Promotion Agreement**") solely in connection with its on-line promotional activities in association with Da Block 365 on the Platform and other relevant music streaming websites as Company may determine in its sole discretion.

   c) Company shall be solely responsible for rendering the agreed upon performance on Partner's behalf under the Promotion Agreement. Partner shall fully cooperate with Company in rendering any such required performance under the resulting Promotion Agreement including, but not limited to, as applicable, promptly providing "drops", hosting Company's mixtapes, and promptly providing or posing for pictures, etc., as reasonably required for the contemplated promotional services.

3.    **Appointment.** Partner hereby appoints Company as Partner's agent to perform the Services on Partner's behalf.

4.    **Scope of Authority.** Company's authority to bind Partner is limited to the Services and resulting Promotion Agreement. Company does not have the authority to bind Partner in any manner whatsoever beyond the Services stated herein and Promotion Agreement.

5.      **Term.** Either Party may terminate this Agreement at any time without cause upon thirty (30) days written notice prior to the effective date of termination. Notwithstanding anything to the contrary herein contained, should Partner deny Company access to the Portal without cause prior to the effective date of termination and after payment is received from a Client, but prior to or during Company's timely completion or rendering of its performance on Partner's behalf under the Promotion Agreement, Company shall no longer be responsible for either rendering any such performance, nor providing the Client a refund. In such an event, Partner shall be solely responsible to the Client under the Promotion Agreement.

6.      **Compensation.** The Parties agree that all net proceeds generated from the Promotion Agreement or any other permitted agreements entered into on Partner's behalf resulting from the Services shall be shared equally (i.e. 50%/50%) between the Parties. The term "net proceeds" as used herein shall refer to all sums that Company receives in the form of earnings generated from the Promotion Agreement, less Company's expenses in connection with the providing required services under the Promotion Agreement, as well as costs in connection with providing the Services hereunder.

7.      **Expenses.** Company shall be entitled to reimbursement for expenses incurred in the course of performing the Services. Partner shall be entitled to reimbursement for all expenses incurred relative to the Promotion Agreement. Company shall reimburse any of Partner's expenses relative to the Promotion Agreement within ten (10) business days following the date that Partner provides Company with original bona fide written receipts or bona fide proof of such expenses.

8.      **Books and Records.** Company shall provide a statement to Partner with all monthly net proceed payments that reflect Partner's share of net proceeds, all earnings generated by the services rendered under the Promotion Agreement, and expenses related to the Promotion Agreement and Services. Partner shall have the right to audit Company's books as they relate to the applicable Promotion Agreement at Partner's sole cost and expense. Such examination shall be made upon thirty (30) days written notice to Company prior to the date when Partner plans to commence such audit, during Company's usual business hours at the place where Company maintains the books and records which relate to Partner and which are necessary to verify the accuracy of the statement or statements specified in Partner's notice to Company and Partner's examination shall be limited to the foregoing. Partner's right to inspect Company's books and records shall be only as set forth in this paragraph 8 and Company shall have no obligation to produce such books and records more than once with respect to each statement rendered to Partner.

9.      **Parties' Relationship.** Nothing in this Agreement shall be construed to create any type of joint venture, partnership, or an employer-employee relationship between Partner and Company.

10.     **Confidentiality, Intellectual Property & Non-disparagement.** For purposes of this Agreement, the term "**Confidential Information**" means all confidential and proprietary

information of a disclosing Party, including but not limited to (i) financial information, (ii) business and marketing plans, (iii) the names of employees and owners, (iv) the names and other personally-identifiable information of Company or Company's principals and employees as a user of the Portal, (v) security codes, and (vi) all documentation provided by Company. During the course of this Agreement, it may be necessary for Partner and Company to share Confidential Information, including trade secrets, industry knowledge, and other confidential information, in order for Company to complete the Services. The Parties will not share any Confidential Information with third parties at any time and shall protect such information applying the same degree of care used by the Parties to protect their own Confidential Information. The Parties also will not use any of each other's Confidential Information for their personal benefit at any time. The Parties acknowledge and agree that all copyrights, trademarks and service marks and rights in the name of or licensed to the receiving Party shall be and remain the sole and complete property of such disclosing Party, and the receiving Party shall not acquire or claim any right, title or interest of any nature in any such copyright, trademark, or service mark. This section remains in full force and effect even after termination of the Agreement by its natural termination or the early termination by either Party. Neither Party shall disclose the terms, scope, and subject matter of this Agreement or the Parties' communications to any third party, or issue any public announcement regarding the terms of this Agreement, without the other Party's prior written agreement. Each Party further agrees to not disparage, demean, or commit any other act that injures the other Party's reputation.

11.     Notwithstanding anything to the contrary contained herein, a Party may disclose Confidential Information (i) if required to do so by legal process (*i.e.*, by a subpoena), provided that such Party shall notify the other Party prior to such disclosure so that such other Party may attempt to prevent such disclosure or seek a protective order; or (ii) to any applicable governmental authority as required in the operation of such Party's business.

12.     **Remedies.**  Each Party understands and acknowledges that the Confidential Information of the disclosing Party has been developed or obtained by the disclosing Party by the investment of significant time, effort and expense, and that such Confidential Information provides such disclosing Party with a significant competitive advantage in its business. The Parties acknowledge and agree that, in the event of any breach of this Agreement, the disclosing Party would be irreparably harmed and could not be made whole by monetary damages.  Accordingly, it is agreed that, in addition to any other remedy to which the disclosing Party may be entitled at law or in equity, the disclosing Party shall be entitled to an injunction or injunctions (without the posting of any bond or other security and without proof of actual damages) to prevent breaches or threatened breaches of this Agreement and/or to compel specific performance of this Agreement.  In case of any disputes, which might arise under this Agreement, the Parties shall undertake reasonable efforts to settle their dispute in an amicable manner.

13.     **Termination.** This Agreement may be terminated as follows:

    a.   At any time by either Party upon written notice to the other Party;

b. By Partner due to Company's breach of the Agreement, insolvency, bankruptcy, liquidation, death or disability;

c. By Company due to Partner's breach of the Agreement, insolvency, bankruptcy, or liquidation.

Company will be responsible for payment of all proceeds received from Services performed up to the date of termination, except for in the case of Partner's breach of this Agreement, where Partner fails to cure such breach upon reasonable notice.

Upon termination, Partner shall return all of Company's content, materials, and all work product to Company at its earliest convenience, but in no event beyond thirty (30) days after the date of termination.

14. **Representations and Warranties.** Both Parties represent that they are fully authorized to enter into this Agreement. The performance and obligations of either Party will not violate or infringe upon the rights of any third-party or violate any other agreement between the Parties, individually, and any other person, organization, or business or any law or governmental regulation.

15. **Indemnity.** The Parties each agree to indemnify and hold harmless the other Party, its respective affiliates, officers, agents, employees, and permitted successors and assigns against any and all claims, losses, damages, liabilities, penalties, punitive damages, expenses, reasonable legal fees and costs of any kind or amount whatsoever reduced to a final non-appealable judgment in a court of competent jurisdiction, which result from the negligence of or breach of this Agreement by the indemnifying Party, its respective successors and assigns that occurs in connection with this Agreement. This section remains in full force and effect even after termination of the Agreement by its natural termination or the early termination by either Party.

16. **Limitation of Liability.** UNDER NO CIRCUMSTANCES SHALL EITHER PARTY BE LIABILE TO THE OTHER PARTY OR ANY THIRD PARTY FOR ANY DAMAGES RESULTING FROM ANY PART OF THIS AGREEMENT SUCH AS, BUT NOT LIMITED TO, LOSS OF REVENUE OR ANTICIPATED PROFIT OR LOST BUSINESS, COSTS OF DELAY OR FAILURE OF DELIVERY, WHICH ARE NOT RELATED TO OR NOT THE DIRECT RESULT OF A PARTY'S NEGLIGENCE OR BREACH.

17. **Severability.** In the event any provision of this Agreement is deemed invalid or unenforceable, in whole or in part, that part shall be severed from the remainder of the Agreement and all other provisions should continue in full force and effect as valid and enforceable.

18. **Waiver.** The failure by either Party to exercise any right, power or privilege under the terms of this Agreement will not be construed as a waiver of any subsequent or further exercise of that right, power or privilege or the exercise of any other right, power or privilege.

19.     **Legal Fees.** In the event of a dispute resulting in legal action, the successful Party will be entitled to its legal fees, including, but not limited to its attorneys' fees.

20.     **Legal and Binding Agreement.** This Agreement is legal and binding between the Parties as stated above. This Agreement may be entered into and is legal and binding both in the United States and throughout the world.

21.     **Governing Law and Jurisdiction.** This Agreement shall be governed by the internal laws of the State of New York without giving effect to the principles of conflicts of laws. Each Party hereby consents to the personal jurisdiction of the Federal or state courts located in New York County, New York, and agrees that all disputes arising from this Agreement shall be prosecuted in such courts. Each Party hereby agrees that any such court shall have in personam jurisdiction over such Party and consents to service of process by notice sent by regular mail to the address set forth above and/or by any means authorized by New York law.

22.     **Signature in Counterparts**. This Agreement may be signed in counterparts, each of which shall be deemed to be a fully-executed original.

23.     **Signature by Facsimile or Email**. An original signature transmitted by facsimile or email shall be deemed to be original for purposes of this Agreement.

24.     **No Third Party Beneficiaries**. This Agreement is made for the sole benefit of the Parties. No other persons shall have any rights or remedies by reason of this Agreement against any of the Parties or shall be considered to be third party beneficiaries of this Agreement in any way.

25.     **Entire Agreement.** The Parties acknowledge and agree that this Agreement represents the entire agreement between the Parties. In the event that the Parties desire to change, add, or otherwise modify any terms, they shall do so in writing to be signed by both Parties.

The Parties agree to the terms and conditions set forth above as demonstrated by their signatures as follows:

**"PARTNER"**

Signed: _____

By: _____ Tiara Newman Johnson _____

Date: _____ 5/15/2020 _____

**"COMPANY"**
**2   Trill Promotions, LLC**

Signed: _____

By: _____

Date: _____5/11/20_____