1

JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com

2

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road

3

Menlo Park, CA 94025
Telephone:     +1 650 614 7400

4

Facsimile:     +1 650 614 7401

5

MICHELLE N. MOLNER (SBN 330438)
mmolner@orrick.com

6

ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street

7

San Francisco, CA 94105-2669
Telephone:     +1 415 773 5700

8

Facsimile:     +1 415 773 57594

9

Attorneys for Defendant
Meta Platforms, Inc.

10

11

UNITED STATES DISTRICT COURT

12

NORTHERN DISTRICT OF CALIFORNIA

13

14

TIARA N. JOHNSON,

Case No. 22-cv-05691-BLF

15

Plaintiff,

**META PLATFORMS, INC.'S
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT**

16

v.

17

META PLATFORMS, INC.
(f/k/a FACEBOOK, INC.)

Hearing Date:  June 15, 2023
Time:  9:00 AM

18

Judge:  Hon. Beth Labson Freeman

Defendant.

Courtroom:  3

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 15, 2023 at 9:00 AM, or as soon thereafter as this matter may be heard by the Honorable Judge Beth Labson Freeman in the United States District Court for the Northern District of California, San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant Meta Platforms, Inc. ("Meta") will and hereby does move to dismiss Plaintiff Tiara N. Johnson's ("Plaintiff") First Amended Complaint.

This Motion is based on the grounds that Plaintiff has not alleged facts sufficient to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and moreover Plaintiff's purported breach of contract and tortious interference claims are barred at the outset by Section 230 of the Communications Decency Act.  Further amendment of Plaintiff's claims is futile, and therefore leave to amend should not be granted.

**STATEMENT OF THE RELIEF SOUGHT:**

In accordance with Northern District Local Rule 7-2(b)(3), Meta asks the Court to dismiss the operative First Amended Complaint with prejudice.

Dated:  February 17, 2023

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Jacob M. Heath*
JACOB M. HEATH
Attorney for Defendant
Meta Platforms, Inc.

**TABLE OF CONTENTS**

Page No.

I.   INTRODUCTION ..................................................................................................1

II.  FACTUAL BACKGROUND ...............................................................................2

III. LEGAL STANDARD ..........................................................................................5

IV.  ARGUMENT .......................................................................................................5

   A. Plaintiff's FAC Should Be Dismissed for Failure to State a Claim............................5

      1.  *Plaintiff fails to state a claim for breach of contract.* .......................................5

      2.  *Plaintiff fails to state a claim for tortious interference with prospective economic relations.* ..........................................................................8

      3.  *Plaintiff fails to state a claim for either trademark infringement or unfair competition under the Lanham Act.* ..............................................................10

   B. Plaintiff's Breach of Contract and Tortious Interference Claims are Independently Barred by Section 230 of the Communications Decency Act. ....................................14

      1.  *Meta is an interactive computer service provider.* ..........................................15

      2.  *The content at issue was provided by another information content provider.*..16

      3.  *Plaintiff's claims seek to treat Meta as a "publisher" or "speaker" of the third-party content.* ........................................................................16

   C. Plaintiff Should Not Be Granted Leave To Amend.....................................................18

V.   CONCLUSION ..................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Facebook, Inc.*,
2019 WL 3767455 (N.D. Cal. Aug. 9, 2019) ...........................................................7

*Adobe Sys. Inc. v. A & S Elecs., Inc.*,
No. C 15-2288 SBA, 2015 WL 13022288 (N.D. Cal. Aug. 19, 2015)....................12

*Appling v. Wachovia Mortg., FSB*,
745 F. Supp. 2d 961 (N.D. Cal. 2010) ...................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................5, 9, 12

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ........................................................................15, 17

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ..................................................................7

*Brittain v. Twitter, Inc.*,
2019 WL 2423375 (N.D. Cal. June 10, 2019) .......................................................19

*Calise v. Meta Platforms, Inc.*,
2022 WL 1240860 (N.D. Cal. April 27, 2022)................................................15, 17

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir.
2017) .........................................................................................6, 15, 17, 18

*Carter v. Oath Holdings, Inc.*,
2018 WL 3067985 (N.D. Cal. June 21, 2018) .......................................................12

*Cross v. Facebook, Inc.*,
14 Cal. App. 5th 190 (2017) .................................................................................17

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
11 Cal. 4th 376 (1995) ........................................................................................8, 9

*Dfinity Found. v. Meta Platforms, Inc.*,
2022 WL 16857036 (N.D. Cal. Nov. 10, 2022) ...............................................10, 13

*Dolin v. Facebook, Inc.*,
2018 WL 2047766 (N.D. Cal. May 2, 2018*)* .........................................8, 9, 10, 18

- ii -

*Ebeid v. Facebook, Inc.*,
    2019 WL 2059662 (N.D. Cal. May 9, 2019) ................................................6, 16, 17

*In re Facebook, Inc.*,
    625 S.W.3d 80 (Tex. 2021) ................................................................................16

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ............................................................................17

*Fed. Agency of News LLC v. Facebook, Inc.*,
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) ...........................................................15, 16

*Franklin v. X Gear 101, LLC*,
    2018 WL 4103492 (S.D.N.Y. Aug. 28, 2018) ..................................................13, 18

*Igbonwa v. Facebook, Inc.*,
    2018 WL 4907632 (N.D. Cal. Oct. 9, 2018).........................................................17

*Johnson v. Facebook, Inc.*,
    Case No. 1:22-cv-00033 ......................................................................................4

*Johnson v. Facebook, Inc.*,
    Case No. C-12-CV-21-000726 ............................................................................4

*Kifle v. YouTube LLC*,
    2021 WL 1530942 (N.D. Cal. Apr. 19, 2021) .......................................................14

*King v. Facebook, Inc.*,
    2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) .......................................................15

*King v. Facebook Inc.*,
    599 F. Supp. 3d 901 (N.D. Cal. 2022) ............................................................7, 19

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003) ...............................................................................8, 9, 10, 18

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ...............................................................................5

*Lloyd v. Facebook, Inc.*,
    2022 WL 4913347 (N.D. Cal. Oct. 3, 2022)........................................................6, 7

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ............................................................................18

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ..............................................................................5

- iii -

*Murphy v. Twitter, Inc.*,
  60 Cal. App. 5th 12 (2021) ...................................................................................7, 17, 19

*Murray v. Cable Nat. Broad. Co.*,
  86 F.3d 858 (9th Cir. 1996) ...................................................................................11

*Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers*,
  795 F.3d 1124 (9th Cir. 2015) ...................................................................................8

*In re Napster, Inc. Copyright Litig.*,
  No. C 00-1369 MHP, 2001 WL 36593841 (N.D. Cal. July 9, 2001) ......................12

*Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*,
  775 F. App'x 350 (9th Cir. 2019) ...........................................................................13

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011) ................................................................................10

*Perfect 10, Inc. v. CCBill LLC*,
  481 F.3d 751 (9th Cir. 2007) ..................................................................................15

*Playvision Labs, Inc. v. Nintendo of Am., Inc.*,
  2015 WL 12941892 (N.D. Cal. May 18, 2015) .......................................................12

*Save Lafayette Trees v. E. Bay Reg'l Park Dist.*,
  66 Cal. App. 5th 21 (2021) .....................................................................................18

*Sazerac Co., Inc. v. Fetzer Vineyards*,
  Inc., 251 F. Supp. 3d 1288, 1298 (N.D. Cal. 2017), *aff'd*, 786 F. App'x 662
  (9th Cir. 2019).................................................................................................10, 11

*Shakey's Inc. v. Covalt*,
  704 F.2d 426 (9th Cir. 1983) ..................................................................................12

*Sikhs for Just., Inc. v. Facebook, Inc.*,
  697 F. App'x 526 (9th Cir. 2017).............................................................................15

*Sole Energy Co. v. Petrominerals Corp.*,
  128 Cal. App. 4th 212 (2005) ...................................................................................9

*Young v. Facebook, Inc.*,
  2010 WL 4269304 (N.D.Cal. Oct. 25, 2010)............................................................6

*Zimmerman v. Facebook, Inc.*,
  2020 WL 58778363 (N.D. Cal. Oct. 2, 2020)..........................................................17

- iv -

1

**Statutes**

15 U.S.C. § 1114..............................................................................................10, 11, 13

15 U.S.C. § 1125....................................................................................................10, 11

28 U.S.C. § 1332...........................................................................................................4

28 U.S.C. § 1441...........................................................................................................4

28 U.S.C. § 1446...........................................................................................................4

47 U.S.C. § 230..................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 5

McCarthy on Trademarks and Unfair Competition § 25:17 (5th Ed.)..........................14

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

META'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 22-CV-05691-BLF

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Meta Platforms, Inc. ("Meta" f/k/a Facebook, Inc.)[1], by its counsel, respectfully submits this memorandum of law in support of its Motion to Dismiss Plaintiff Tiara N. Johnson's ("Plaintiff") First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    INTRODUCTION

In December 2021, Plaintiff sued Meta asserting causes of action for breach of contract, tortious interference with prospective economic relations, and trademark infringement and unfair competition under the Lanham Act.[2]  Central to Plaintiff's FAC are allegations that Meta wrongfully disabled her Instagram account in July 2021, which Plaintiff admits she used to promote and sell "fine adult toys" and "adult paraphernalia."  Plaintiff further alleges that other users have purportedly opened "imitation accounts" on Instagram that allegedly infringe her trademark.  As established below, Plaintiff's claims each fail and the FAC should be dismissed with prejudice for several reasons.

*First,* pursuant to Rule 12(b)(6), Plaintiff has failed to state any viable claim for relief. Crucially, Plaintiff's breach of contract claim fails because the Instagram Terms of Use allow Meta to remove content and disable accounts that violate its Community Standards.  Plaintiff's tortious interference claim fails because the FAC fails to plead facts to establish Meta's knowledge of the specific relationships allegedly interfered with, any active intent to disrupt those relationships, or any independent wrongful act.  Plaintiff's claims for trademark infringement and unfair competition under the Lanham Act fare no better, because the FAC fails to plead any plausible allegations that Meta—or the unidentified third parties operating the alleged imitation accounts—is using an infringing mark in commerce, let alone doing so in a manner that is likely to confuse or deceive consumers.

*Second*, Plaintiff's breach of contract and tortious interference claims against Meta are

---

[1] On October 28, 2021, Facebook, Inc. changed its name to Meta Platforms, Inc.

[2] The FAC also alleges a claim of tortious interference with contractual relations against John Doe only.

- 1 -

both independently barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c), because each claim stems from Meta's alleged decision to disable Plaintiff's account, which is an editorial function expressly protected by Section 230.  As such, these two claims against Meta are fatally flawed at the outset.

Given that Plaintiff is unable to cure these deficiencies in each of her claims, this Court should dismiss the FAC with prejudice.

## II.   FACTUAL BACKGROUND

Meta owns and operates a suite of online services—including the Instagram service ("Instagram")—to connect people, build community, and bring the world closer together.  After creating an Instagram account, users can post photos and videos, follow and be followed by other users, and advertise their business or products through the account.

Plaintiff alleges that in 2011, she joined Instagram and created an account with the username @LICKMYKAKEZ ("Account").  FAC ¶¶ 1, 21, 37.  Plaintiff describes herself as a "purveyor of fine adult toys" and "fine adult paraphernalia." *Id.* ¶¶ 1, 37.  Plaintiff claims that in January 2020, she "started a business under the name KAKEYTAUGHTME selling adult toys and products." *Id.* ¶ 26.  Plaintiff claims to own the trademark "KAKEYTAUGHTME" in connection with her business. *Id.* ¶ 27, 57; *see also* FAC Exhibit B ("FAC Ex. B").  Plaintiff alleges that her Account was a "business account", *id.* ¶ 16, that she used to promote her business "by purchasing Facebook and Instagram advertisement." *Id.* ¶¶ 26, 16.

Plaintiff alleges that in July 2021 Meta disabled her Account.  FAC ¶ 29.  According to Plaintiff, the disablement was triggered by another Instagram user ("John Doe") reporting her Account. *See id.* ¶ 31.  Plaintiff alleges that John Doe was paid to report and suspend her Account. *See id.*; *see also id.* ¶ 38 ("John Doe is an Instagram user.").  Plaintiff alleges that once the purported report was received by Meta, Meta disabled the Account automatically and with "no human intervention." *Id.* ¶ 41.  In an attempt to get the Instagram user's report withdrawn, Plaintiff claims she "contacted John Doe who… promised that he can get a Facebook Pro to reactivate Plaintiff's account for $3000." *Id.* ¶ 32.  Plaintiff paid John Doe this sum. *Id.*

- 2 -

However, John Doe's promise to restore Plaintiff's Account appears to have been a scam as he had no internal control or affiliation with Meta, and following Plaintiff's payment, he "blocked Plaintiff and subsequently disappeared". *Id.* Plaintiff's Account was not restored.

Plaintiff alleges she had agreements, contracts, or relationship arising from her business and that the disablement of her Account interfered with those contracts. *Id.* ¶19. According to Plaintiff, these included an agreement with 2 Trill Promotions, LLC to promote Plaintiff's products, *see id.* ¶ 17; "employment contracts" with three individual employees, *see id.* ¶ 18; and an "agreement, contract, or relationship" with various other Instagram accounts to "promote and influence" the respective products of those other accounts, *see id.* ¶ 19.

Plaintiff also alleges that, after her Account was disabled, other Instagram users created "false and imitation accounts" that purportedly infringe on Plaintiff's trademark "KAKEYTAUGHTME." *Id.* ¶ 33. Plaintiff alleges, without support, that Meta's decision to not disable these accounts renders Meta liable for trademark infringement and unfair competition. *See id.* ¶ 60-61, 70.

When Plaintiff created her Account in 2011, as well as at periodic points thereafter, Plaintiff agreed to the Instagram Terms of Use ("Terms of Use"). *Id.* ¶ 22; *see also* FAC Exhibit A ("FAC Ex. A"). Plaintiff admits the Terms of Use are valid and enforceable. *See* FAC ¶ 23 ("The Instagram Terms of Use is a contractual agreement between Plaintiff and Defendant."); *see also* FAC Ex. A at 1 ("These Terms of Use therefore constitute an agreement between you and [Meta].") Those Terms of Use govern Meta's relationship with all of its users and reserve Meta's right to disable accounts:

> [Meta] can refuse to provide or stop providing all or part of the Service to you (including terminating or disabling your access to the Facebook Products and Facebook Company Products) immediately to protect our community or services, or if you create risk or legal exposure for us, violate these Terms of Use or our policies (including our Instagram Community Guidelines), … or where we are permitted or required to do so by law.

FAC ¶ 25 (quoting Instagram Terms of Use); *see also* FAC Ex. A at 6. Under the Terms

- 3 -

of Use, the parties also agree that Meta cannot be held liable for any user-generated content:

> We also don't control what people and others do or say, and we aren't responsible for their (or your) actions or conduct… or content (including unlawful or objectionable content).

FAC Ex. A at 8.  Through the Terms of Use, the parties agreed to hold Meta harmless for any lost profits or revenues; indirect, punitive, or incidental damages; or reasonable attorney's fees or costs relating to the Terms of Use, including when Meta disables a user's account:

> You agree that we won't be responsible ("liable") for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms, even if we know they are possible.  This includes when we delete your content, information, or account.

> You agree to… hold us harmless from and against any claims, liabilities, damages, losses, and expenses, including without limitation, reasonable attorney's fees and costs, arising out of or in any way connected with these Terms or your use of the Service.

*Id.*  On December 2, 2021, Plaintiff filed the initial complaint against Meta in Maryland state court.  *Johnson v. Facebook, Inc.*, Case No. C-12-CV-21-000726.  On January 7, 2022, Meta removed the case to the U.S. district court for the District of Maryland, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  *Johnson v. Facebook, Inc.*, Case No. 1:22-cv-00033.  On February 10, 2022, Plaintiff filed the FAC in the District of Maryland.  On March 10, 2022, Meta moved to dismiss or in the alternative transfer venue to the Northern District of California, per the valid forum selection clause in the Terms of Use.  On October 3, 2022, the court transferred the case to this Court.

Plaintiff's FAC asserts claims against Meta for breach of contract (Count I), tortious interference with prospective relations (Count III), trademark infringement under the Lanham Act (Count IV), and unfair competition under the Lanham Act (Count V).[3]  For the reasons stated

---

[3]  Count II of the FAC alleges a claim of tortious interference with contractual relations against John Doe only.

1    below, Plaintiff's FAC should be dismissed with prejudice.

2    **III.    LEGAL STANDARD**

3            To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient

4    factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

5    662, 678 (2009) (citation omitted).  Dismissal is appropriate "where the complaint lacks a

6    cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

7    *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  In conducting a Rule 12(b)(6)

8    analysis, the court may consider the complaint, material relied upon in the complaint, and

9    material subject to judicial notice.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th

10   Cir. 2001).  The court must accept "well-pleaded factual allegations" as true, but need not

11   "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 664, 678.

12   **IV.    ARGUMENT**

13           Plaintiff's FAC should be dismissed for failure to state a claim, because its factual

14   allegations are insufficient to support the essential elements of any of Plaintiff's purported

15   claims.  Moreover, Plaintiff's claims for breach of contract and tortious interference each stem

16   from Meta's alleged decision to disable the Account and are therefore barred by law under

17   Section 230 of the Communications Decency Act.

18           **A.    Plaintiff's FAC Should Be Dismissed for Failure to State a Claim.**

19                   1.    *Plaintiff fails to state a claim for breach of contract.*

20           To plead a claim for breach of contract under California law, a plaintiff must allege:  "(1)

21   existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3)

22   defendant's breach; and (4) damages." *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961,

23   974 (N.D. Cal. 2010).  Plaintiff alleges that Meta breached the Terms of Use by disabling her

24   Account despite Plaintiff "not violat[ing] any term of use," failing to inform Plaintiff why the

25   Account was disabled, and "permit[ting] new false and imitation accounts" that allegedly

26   infringe Plaintiff's trademark.  FAC ¶¶ 29, 30, 33.  Plaintiff's argument fails for three reasons.

27           ***First***, Plaintiff has failed to plead any specific provision in the Terms of Use whereby

28

- 5 -

Meta promises to refrain from the above alleged conduct.  *See Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) (for breach of contract, "the complaint must identify the specific provision of the contract allegedly breached"); *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *8 (N.D. Cal. Oct. 3, 2022) (plaintiff must identify a "clear and well defined… promise"); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *7 (N.D. Cal. May 9, 2019) (dismissing breach of contract claim for failure to identify specific provision breached).  Plaintiff's FAC merely restates large portions of the Instagram Terms of Use, *see* FAC ¶¶ 24-25, and makes conclusory allegations that Meta "breached its obligation to provide the Instagram Service when [it] disabled Plaintiff's account."  FAC ¶ 29.  However, Meta *has no* contractual obligation to provide the Instagram service to Plaintiff.  *See* FAC Ex. A at 6 ("[Meta] can refuse to provide or stop providing all or part of the Service to you… immediately").  In fact, Courts have repeatedly recognized that "while [Meta's] Terms of Service place restrictions on users' behavior, they *do not create affirmative obligations*" on Meta. *Caraccioli*, 167 F. Supp. 3d at 1064 (dismissing breach of contract claim because Meta's Terms of Use created no affirmative obligation for Meta to disable a third-party account) (emphasis added); *see also Young v. Facebook, Inc.*, 2010 WL 4269304, at *3 (N.D.Cal. Oct. 25, 2010) (dismissing breach of contract claim because no affirmative obligation that prevented Meta from disabling plaintiff's account).  Thus, Plaintiff has not identified any "clear and well defined… promise" in the Terms of Use for Meta to refrain from disabling Plaintiff's Account, and indeed there is none.  *Lloyd*, 2022 WL 4913347, at *8 (dismissing breach of contract claim under Meta's Terms of Use).

      ***Second,*** the Terms of Use makes clear that none of the alleged conduct constitutes a breach and is in fact expressly *permitted* by the Terms.  In particular, the Terms of Use broadly permit Meta to "refuse to provide or stop providing all or part of the Service to you… immediately to protect our community or services, or if you create risk or legal exposure for us, … or where we are permitted or required to do so by law… [or] if we determine that doing so is reasonably necessary to avoid or mitigate adverse legal or regulatory impacts on us."  FAC ¶ 25;

- 6 -

1    FAC Ex. A at 6.  This includes by "terminating or disabling your access to [Meta services]".  *Id.*

2    The Terms of Use do not require Meta to communicate its reasons for disabling an Account.

3    FAC Ex. A at 6 (permitting the user to contact Meta's Help Center if they believe their account

4    has been "terminated in error", but not requiring Meta to provide its reason for termination).

5    Likewise, the Terms of Use do not obligate Meta to affirmatively prevent users from creating

6    accounts that Plaintiff believes are "false or imitation."[4]

7         ***Third***, Plaintiff's breach of contract claim should be dismissed because her alleged lost

8    profit damages related to the breach of contract claim (and in fact, all claims) are not recoverable

9    pursuant to the Terms of Use's limitation of liability provision.  Waivers of liability that are

10   "clear, unambiguous and explicit bar claims that expressly fall within their scope."  *Murphy v.*

11   *Twitter, Inc.*, 60 Cal. App. 5th 12, 25 (2021) (affirming sustained demurrer to breach of contract

12   claim when Twitter disabled plaintiff's account).  Plaintiff claims to have sustained "actual

13   damages" in the form of "lost profits."  FAC ¶¶ 54, 65, 72.  But the Terms of Use expressly

14   disclaim Meta's liability for "any lost profits, revenues, … or consequential, special, indirect,

15   exemplary, punitive, or incidental damages arising out of or related to these Terms, even if we

16   know they are possible."  FAC Ex. A at 8.  "This includes when [Meta] delete[s] your content,

17   information, or account."  *Id*.  Thus, even if Plaintiff could otherwise assert a breach of contract

18   claim—which she cannot—Meta cannot be held liable for the purported damages, and her claim

19   is therefore subject to dismissal.  *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1038 (N.D.

20   Cal. 2019) (dismissing contract claim due to Meta's limitation of liability clause); *see also*

21   *Adkins v. Facebook, Inc*., 2019 WL 3767455, at *3 (N.D. Cal. Aug. 9, 2019) (enforcing Meta's

22   limitation of liability clause); *King v. Facebook Inc.,* 599 F. Supp. 3d 901, 906 (N.D. Cal. 2022)

23   (same).

24

25

26   ───────────────

[4] The Instagram Terms of Use do not condone users "infring[ing] other people's intellectual property rights."  *See* Compl. ¶ 25, FAC Ex. A at 6.  Rights holders are able to report to Meta content that they believe violates their intellectual property rights, and Meta diligently investigates these reports.  Notably, the FAC does not allege that Plaintiff reported these "imitation accounts" to Meta.

28

- 7 -

2.      *Plaintiff fails to state a claim for tortious interference with prospective economic relations.*

To state a claim for tortious interference, plaintiff must show:  "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) [defendant's] intentional acts… designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused."  *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003); *see also Dolin v. Facebook, Inc.,* 2018 WL 2047766, at *3 (N.D. Cal. May 2, 2018) (listing same elements).  It is not enough that a defendant merely "was aware" of plaintiff's account; plaintiff must show defendant knew of the *specific* economic relations between plaintiff and particular individuals or entities.  *Dolin*, 2018 WL 2047766, at *4 (rejecting plaintiff's argument that "because Facebook was aware of [plaintiff's] shopping platform, it must have also known about his economic relationship with his users").  Lastly, defendant's conduct must be "wrongful by some legal measure other than the fact of interference itself."  *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 379 (1995); *see also Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers*, 795 F.3d 1124, 1133 (9th Cir. 2015) (dismissing tortious interference claim for lack of independent wrongful act).  "An act is not independently wrongful merely because defendant acted with an improper motive."  *Korea Supply Co.*, 29 Cal.4th at 950.  Rather, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  *Id*. at 954.

Here, Plaintiff alleges that, by purportedly disabling her Account, Meta tortiously interfered with Plaintiff's economic relationships with 2 Trill Promotions, LLC; several employees; and various Instagram accounts whose products Plaintiff "promote[d] and influence[d]."  FAC ¶¶ 17-19.  Plaintiff's claim fails for several reasons.

***First***, Plaintiff fails to sufficiently plead Meta's knowledge of any specific economic relationships.  To allege that Meta tortiously interfered with Plaintiff's economic relations

- 8 -

requires her to show that Meta *knew about* those relations in the first place.  *See Korea Supply Co.*, 63 P.3d at 950.  However, Plaintiff does not allege that Meta specifically knew or had any reason to know of Plaintiff's contract with 2 Trill Promotions, LLC; her employment agreements with various employees; or her "agreement[s], contract[s], or relationship[s]" with various other Instagram accounts to "promote and influence the respective products for each Instagram handle."  FAC ¶¶ 17-19.  That Meta was "aware that Plaintiff's account was a business account" and thus should "reasonably infer with Plaintiff's business and relationships", FAC ¶ 52, is insufficient to show knowledge of the specific economic relationships between Plaintiff and these individuals or entities.  *See Dolin*, 2018 WL 2047766, at *4 (dismissing tortious interference claim because defendant merely "was aware" of plaintiff's platform but not of specific economic relations); *Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 241 (2005) (dismissing claim for same reason).

**Second**, Plaintiff fails to plead any wrongful or intentional acts by Meta designed to disrupt Plaintiff's economic relationships.  The FAC makes several conclusory allegations that Meta's actions were "intentional and improper," "intentional, willful, and calculated to cause damage," and "perpetrated with the intention and improper purpose of causing damage… without justifiable cause."  FAC ¶¶ 48, 53.  However, each of these statements is unsupported by any factual allegations, and merely repeating elements is insufficient to state a claim.  *Iqbal,* 556 U.S. at 678 ("formulaic recitation of the elements" is insufficient to survive motion to dismiss).

Indeed, Plaintiff's only factual allegations related to her tortious interference claim are that Meta "either directed an employee to disable Plaintiff's account or [Meta's] algorithm disable[d] Plaintiff's account" following John Doe's "false report… alleging Plaintiff's postings violated Instagram's terms of use" and that this "interfered with Plaintiff's agreement, contract, or relationship[s]."  Comp. ¶¶ 47-49.  Plaintiff does not and cannot allege facts supporting that Meta *intended to disrupt* any of Plaintiff's relations when it allegedly disabled the Account.  Moreover, Plaintiff does not and cannot show that Meta engaged in any "wrongful" act, *Della Penna*, 11 Cal. 4th at 379, and certainly no acts that rise to the level of being "unlawful" or

- 9 -

"proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co.*, 29 Cal.4th at 954.  Moreover, as outlined above, Meta's disabling of user accounts is expressly permitted by the Terms of Use, especially where, as alleged here, it is in response to a report that the account "violated Instagram's terms of use." FAC ¶ 47.

Accordingly, Plaintiff fails to plead essential elements to support a claim against Meta for tortious interference with prospective relations.

   3. *Plaintiff fails to state a claim for either trademark infringement or unfair competition under the Lanham Act.*

Plaintiff's federal trademark infringement and federal unfair competition claims each originate under the Lanham Act—15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), respectively—and rely on the same basic elements so are handled here together.  Specifically, to allege trademark infringement under 15 U.S.C. § 1114, a plaintiff must show:  "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,* 638 F.3d 1137, 1144 (9th Cir. 2011) (internal quotations omitted); *see also Dolin*, 2018 WL 2047766, at *7 (N.D. Cal. May 2, 2018) (same).  The plaintiff must also "have been the first to actually use the mark in the sale of goods or services." *Dfinity Found. v. Meta Platforms, Inc.*, 2022 WL 16857036, at *3 (N.D. Cal. Nov. 10, 2022) (internal quotations omitted); *see also* 15 U.S.C. § 1114(1)(a) (a person who "use[s] in commerce… a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services… shall be liable in a civil action by the registrant").

The elements of unfair competition under 15 U.S.C. § 1125(a) are essentially the same, but generally apply to unregistered marks.  *See Sazerac Co., Inc. v. Fetzer Vineyards*, Inc., 251 F. Supp. 3d 1288, 1298 (N.D. Cal. 2017), *aff'd*, 786 F. App'x 662 (9th Cir. 2019) ("federal trademark infringement under the Lanham Act… and unfair competition are subject to the same 'ultimate test' of 'whether the public is likely to be deceived or confused by the similarity of the

- 10 -

marks.'") (citation omitted); *see also Murray v. Cable Nat. Broad. Co*., 86 F.3d 858, 860 (9th Cir. 1996) ("To maintain an action for trademark infringement under 15 U.S.C. § 1114 [and] false designation of origin under 15 U.S.C. § 1125(a), a plaintiff must prove the defendant's use of the same or similar mark would create a likelihood of consumer confusion.") (citation omitted).

Here, Plaintiff alleges that, following the purported disabling of her Account, other Instagram users created various "imitation accounts" which purportedly infringe on her trademark KAKEYTAUGHTME and that Meta's failure to disable these accounts renders it likewise liable for trademark infringement and unfair competition.  Plaintiff's argument fails because the FAC fails to allege facts establishing any of the three essential elements to state either claim.

> a)   Plaintiff fails to sufficiently allege ownership of a mark.

***First***, Plaintiff alleges that she owns the federal registration to the KAKEYTAUGHTME mark.  However, the registration appended to the FAC shows a "Tiara Welch" as the owner.  *See* FAC Ex. B.  This alone is sufficient basis to dismiss Plaintiff's claim for trademark infringement under the Lanham Act.  *See* 15 U.S.C. § 1114(1)(a) (stating only "the registrant" is entitled to bring a cause of action).

> b)   Plaintiff fails to sufficiently allege likelihood of confusion.

***Second***, the FAC fails to plead sufficient facts that show the "imitation accounts" give rise to a likelihood of confusion of Plaintiff's alleged trademark rights.  Likelihood of confusion is the *sine qua non* of trademark infringement and unfair competition claims, and the Ninth Circuit traditionally weighs a set of factors to determine whether it exists.  *Sazerac Co., Inc.,* 251 F. Supp. 3d at 1298 (stating likelihood of confusing is the "ultimate test" for both trademark infringement and unfair competition under the Lanham Act).  Factors related to likelihood of confusion include:  "similarities between the protected and the allegedly infringing marks, the class of goods in question and the corresponding degree of care likely to be exercised by purchasers in selecting a product, the marketing channels, the intent of the alleged infringer,

- 11 -

1  evidence of actual confusion, and the fame of the prior mark." *Shakey's Inc. v. Covalt,* 704 F.2d

2  426, 431 (9th Cir. 1983).

3  This Court has held that unsupported allegations that an accused mark is "deceptive,

4  confusing, and… likely to cause mistake on the part of [the] consuming public" are "legal

5  conclusions and are 'not entitled to be assumed true.'" *Carter v. Oath Holdings, Inc.,* 2018 WL

6  3067985, at *3 (N.D. Cal. June 21, 2018) (citation omitted).  Thus, a complaint that relies on

7  only "conclusory statements" and "[t]hreadbare recitations of the elements" to show likelihood

8  of confusion cannot survive a motion to dismiss.  *Iqbal,* 556 U.S. at 678; *see also Adobe Sys. Inc.*

9  *v. A & S Elecs., Inc.,* No. C 15-2288 SBA, 2015 WL 13022288, at *4 (N.D. Cal. Aug. 19, 2015)

10  (granting motion to dismiss because "[plaintiff's] allegations of customer confusion are too

11  conclusory to state a claim for trademark infringement.").  This Court has dismissed trademark

12  infringement and unfair competition claims where, as here, the pleadings fail to allege facts to

13  plausibly show how consumers would be confused.  *See, e.g., In re Napster, Inc. Copyright*

14  *Litig.,* No. C 00-1369 MHP, 2001 WL 36593841, at *5 (N.D. Cal. July 9, 2001) (dismissing with

15  prejudice trademark infringement and unfair competition claims because complaint contained

16  only "generalized, conclusory allegation[s]"); *Playvision Labs, Inc. v. Nintendo of Am., Inc.,*

17  2015 WL 12941892, at *1 (N.D. Cal. May 18, 2015) (dismissing with prejudice trademark claim

18  because plaintiff's allegations were "insufficient… and conclusory").

19  Here, the FAC provides only the type of "legal conclusions" that are subject to dismissal.

20  *Carter,* 2018 WL 3067985, at *3.  Plaintiff fails to provide *any* factual allegations related to *any*

21  of the factors the Ninth Circuit considers when determining whether likelihood of confusion

22  exists.  Plaintiff simply lists the account names of several Instagram accounts and then states that

23  "[s]ome of these accounts… increase the likelihood of confusion of consumers" without further

24  elaboration as to *how* such likelihood of confusion is increased.  FAC ¶ 58.  For example, the

25  FAC is devoid of any allegations regarding the similarities between Plaintiff's mark and the

26  allegedly infringing marks, many of which are actually dissimilar.  *See, e.g., id.* (compare

27  "imitation accounts" KAKEY_PRIVATE101 and LICKMYKAKEZ123 to Plaintiff's mark

28

- 12 -

KAKEYTAUGHTME).  The FAC likewise makes no factual allegations regarding the types of goods or services, if any, that are marketed or sold by those imitation accounts and whether they are similar to Plaintiff's own products.  Lastly, the FAC is devoid of any allegations regarding whether there has been actual confusion regarding the source, sponsorship, or affiliation of the imitation account's offerings.  *See* FAC ¶¶ 58–65, 69– 72.  Thus, Plaintiff's FAC fails to sufficiently plead likelihood of confusion.

> c)   Plaintiff fails to sufficiently allege use in commerce.

*Finally*, the FAC fails to plead facts showing Meta is using Plaintiff's mark or any confusingly similar marks in commerce, as is required to state a trademark infringement claim. *See Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*, 775 F. App'x 350, 351 (9th Cir. 2019) ("A valid trademark-infringement claim requires that the alleged infringing mark have been used in commerce.") (citation omitted).  To plead this element, the FAC must allege facts showing *Meta* used the purportedly infringing marks to sell, offer for sale, distribute, or advertise *its own* goods or services.  *See* 15 U.S.C. §§ 1114(1) (only the "person who shall… use in commerce any… registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services… shall be liable in a civil suit").  The FAC fails to do so. Instead, it only alleges that *other Instagram users* created imitation accounts that allegedly use Plaintiff's mark, not Meta.  *See* FAC ¶¶ 60–61 ("By permitting *third parties to use another's mark* that imitate Plaintiff's mark, and receiving advertisement revenue from these imitation accounts and marks, Facebook is using in commerce, directly or indirectly, Plaintiff's mark."). Thus, because the FAC fails to allege Meta's direct use of the KAKEYTAUGHTME mark in commerce, both Lanham Act claims must be dismissed.  *See, e.g., Franklin v. X Gear 101, LLC*, 2018 WL 4103492, at *5 (S.D.N.Y. Aug. 28, 2018) (dismissing trademark claims against Instagram when plaintiff only alleged that "Instagram provides an application on which [third parties] publish images of the infringing logo" which does not constitute use in commerce by Instagram); *Nelson-Ricks Cheese Co., Inc.*, 775 F. App'x at 351 (dismissing for lack of use in commerce).

- 13 -

1

d)     Plaintiff fails to allege secondary liability.

2

In addition to alleging *direct* trademark infringement against Meta, Plaintiff also attempts

3

to plead that Meta is "*indirectly*" liable for "secondary infringement" because it "turned a blind

4

eye to these [imitation] accounts" which allegedly infringe on Plaintiff's mark.  FAC ¶¶ 60–61

5

(emphasis added) and ¶¶ 69–70.  However, secondary infringement under the Lanham Act

6

requires a finding that some other entity is liable for primary infringement.  *See Kifle v. YouTube*

7

*LLC,* 2021 WL 1530942, at *5 (N.D. Cal. Apr. 19, 2021) ("To establish secondary infringement,

8

i.e., contributory or vicarious infringement, a plaintiff must first establish that there has been

9

direct infringement by third parties.") (citation omitted).  Here, as discussed above, the FAC fails

10

to make the requisite showings of mark ownership, likelihood of confusion, and use in commerce

11

as applied to Meta or even the third-party owners of the imitation accounts.  Thus, this failure to

12

plead primary infringement by the third-party imitation account owners necessarily means that a

13

claim of secondary infringement against Meta must fail.  *See Kifle,* 2021 WL 1530942, at *5

14

(finding no likelihood of success on the merits for secondary infringement claim due to lack of

15

primary infringement claim); *see also* 4 McCarthy on Trademarks and Unfair Competition §

16

25:17 (5th Ed.) ("By definition, there can be no liability for contributory infringement unless

17

there is direct infringement.").

18

Accordingly, Plaintiff fails to adequately plead any essential elements to support a claim

19

for trademark infringement or unfair competition under the Lanham Act.  Having failed to plead

20

any viable claim against Meta, Plaintiff's FAC should be dismissed with prejudice.

21

**B.    Plaintiff's Breach of Contract and Tortious Interference Claims are**

22

**Independently Barred by Section 230 of the Communications Decency Act.**

23

Even if Plaintiff had pled facts to assert a breach of contract or tortious interference claim

24

against Meta—which she has not—both claims still fail for the independent reason that they are

25

barred as a matter of law by Section 230 of the Communications Decency Act, 47 U.S.C. § 230

26

*et seq.* ("Section 230").  Section 230 "establish[es] broad federal immunity to any cause of action

27

that would make service providers liable for information originating with a third-party user of the

28

- 14 -

service." *Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751, 767 (9th Cir. 2007) (internal quotations and citations omitted).  Crucially, Section 230 bars claims based on a service provider's decisions about "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content"—the exact facts Plaintiff alleges here.  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009) (holding Section 230 immunized any "activity that can be boiled down to deciding whether to exclude material that third parties seek to post online"); *see, e.g.*, *King v. Facebook, Inc.*, 2019 WL 4221768, at *3–4 (N.D. Cal. Sept. 5, 2019) (holding that Section 230 protected websites "regardless of their moderation process").

Under Section 230(c)(1), a claim should be dismissed if (1) the defendant is a "provider… of an interactive computer service"; (2) the allegedly offending content was "provided by another information content provider"; and (3) the plaintiff's claim treats the defendant as the "publisher or speaker" of that content.  47 U.S.C. § 230(c)(1).

Here, Plaintiff's breach of contract and tortious interference claims are predicated on allegations that either Meta disabled Plaintiff's Account or failed to disable various "imitation accounts."  *See, e.g.,* FAC ¶¶ 29, 61.  These claims are clearly barred by Section 230.

   1.   *Meta is an interactive computer service provider.*

Section 230 only shields "provider[s] of an interactive computer service."  *See* 47 U.S.C. § 230(c)(1).  An interactive computer service provider is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  Courts have uniformly held that Meta meets Section 230's "interactive computer service provider" definition.  *See e.g., Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (affirming dismissal of claims based on Section 230 because Meta is an interactive computer service provider); *Sikhs for Just., Inc. v. Facebook, Inc.,* 697 F. App'x 526, 526 (9th Cir. 2017) ("it is undisputed that Facebook is an interactive computer service provider"); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020) ("Facebook is unquestionably an interactive computer service, as the Court previously held"); *Calise v. Meta Platforms, Inc.*, 2022 WL 1240860, at *2

- 15 -

(N.D. Cal. April 27, 2022) (same); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *3 (N.D. Cal. May 9, 2019) (same); *In re Facebook, Inc.*, 625 S.W.3d 80, 96 (Tex. 2021) (finding Section 230 barred claims against Meta by a user of Instagram and Facebook).

        2.    *The content at issue was provided by another information content provider.*

For Section 230 to apply, the information for which Plaintiff seeks to hold Meta liable must come from an "information content provider" other than Meta.  47 U.S.C. § 230(c)(1). This inquiry is simple if, as here, the "complaint admits that [the plaintiff] is the source of the information that Meta removed" and plaintiff "nowhere alleges that [Meta itself] provided, created, or developed any portion" of the content or account at issue.  *Fed. Agency of News,* 395 F. Supp. 3d at 1305-06 (by alleging plaintiff "operated a Facebook page through which [it] has published its posts", plaintiff "admits that [it] is the source of the information" for Section 230 purposes).

Here, Plaintiff claims that Meta breached its Terms of Use and tortiously interfered with Plaintiff's economic relations by disabling Plaintiff's Account.  Thus, the information at issue here is Plaintiff's own Account and the content she posted there.  These each expressly constitute information "provided by another information content provider"—*i.e.,* Plaintiff herself.  47 U.S.C. § 230(c)(1); *see also* FAC ¶¶ 1, 26, 28-29, 37, 45 (alleging that Plaintiff operated account to promote her business); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *7 (N.D. Cal. 2019) ("Plaintiff argues that the information at issue was not provided by another information content provider because plaintiff himself—not some other third-party—provided the information.  That argument has been repeatedly rejected.").  Plaintiff does not and cannot allege that Meta created or provided any of the information at issue.  Accordingly, Section 230(c)(1)'s second requirement is met.

        3.    *Plaintiff's claims seek to treat Meta as a "publisher" or "speaker" of the third-party content.*

Section 230 protects interactive computer service providers when the claim seeks to treat

- 16 -

the provider as a "publisher" of the third-party content.  A defendant is treated as a "publisher" when it is exercising traditionally "editorial functions", such as whether to "publish, withdraw, postpone, or alter content created by third parties." *Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1102 (9th Cir. 2009)*; *see also Caraccioli*, 700 F. App'x 588 (affirming dismissal of breach of contract and unfair competition claims under Section 230); *Calise*, 2022 WL 1240860, at *4 (dismissing breach of contract and unfair competition claims under Section 230); *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 206 (2017) (dismissing breach of contract and negligent interference with prospective economic relations claims under Section 230); *Ebeid v. Facebook, Inc.,* 2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019) (dismissing unfair business practices claim under Section 230); *Igbonwa v. Facebook, Inc.*, 2018 WL 4907632 at *7 (N.D. Cal. Oct. 9, 2018) (dismissing defamation and negligence claims under Section 230).

Here, Plaintiff's purported breach of contract and tortious interference claims stem from Meta's alleged decision to disable Plaintiff's Account.  This is "precisely the kind of activity for which Section 230 was meant to provide immunity." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170 (9th Cir. 2008).  California state and federal courts have regularly dismissed similar claims when premised on a defendant's decision of whether or not to remove content or users from its website. *See, e.g.*, *Caraccioli*, 700 F. App'x 588 (affirming dismissal of breach of contract and unfair competition claims based on Meta's decision to not remove content); *Calise*, 2022 WL 1240860, at *4 (dismissing breach of contract and unfair competition claims based on Meta's decision to not remove content); *Zimmerman v. Facebook, Inc.*, 2020 WL 58778363 (N.D. Cal. Oct. 2, 2020) (dismissing breach of contract claim based on Meta's decision to disable plaintiff's Facebook profile); *Ebeid*, 2019 WL 2059662, at *3 (dismissing breach of contract and unlawful business practices claims based on Meta's decision to remove plaintiff's Facebook posts); *see also Murphy v. Twitter, Inc*., 60 Cal. App. 5th 12 (2021) (dismissing fraud and breach of contract claims based on Twitter's removal of content).  Because Plaintiff's purported breach of contract and tortious interference claims attempt to treat Meta as the publisher or speaker of the content at issue, Section 230's

- 17 -

1    final requirement is met.

2        **C.    Plaintiff Should Not Be Granted Leave To Amend.**

3        Plaintiff should not be given the opportunity to replead her claim.  Although leave to

4    amend may be granted if amendments could potentially cure the FAC failings, "where the nature

5    of the plaintiff's claim is clear, and under substantive law no liability exists, a court should deny

6    leave to amend because no amendment could change the result."  *Save Lafayette Trees v. E. Bay*

7    *Reg'l Park Dist.*, 66 Cal. App. 5th 21, 52 (2021).  Leave to amend is thus inappropriate if "the

8    pleading could not possibly be cured by the allegations of other facts."  *Lopez v. Smith*, 203 F.3d

9    1122, 1127 (9th Cir. 2000) (*en banc*).  Here, leave to amend would be inappropriate for two

10   reasons.

11       *First*, as established above, Plaintiff's claim suffers fatal deficiencies that cannot be

12   overcome with further amendments.  *See* Section IV.A, *supra.*  For example, Plaintiff's breach of

13   contract claim inevitably fails, because it is premised on the notion that Meta has breached some

14   affirmative obligation under the Terms of Use and this Court has already determined that Terms

15   of Use do not create affirmative obligations that can support a breach of contract claim.  *See*

16   *Caraccioli*, 167 F. Supp. 3d at 1064 (dismissing breach of contract claim without leave to amend

17   because "[Meta's] Terms of Service… do not create affirmative obligations").  Likewise,

18   Plaintiff's tortious interference claim inevitably fails, because Plaintiff cannot show that Meta

19   ever knew of any specific economic relations between Plaintiff and the alleged individuals or

20   entities.  *See Korea Supply Co.*, 63 P.3d at 950 (requiring knowledge of specific economic

21   relations); *Dolin*, 2018 WL 2047766, at *4 (dismissing tortious interference claim without leave

22   to amend because defendant merely "was aware" of plaintiff's platform).  Finally, Plaintiff's two

23   Lanham Act claims for trademark infringement and unfair competition necessarily fail because

24   Plaintiff cannot show that Meta ever used Plaintiff's mark or any confusingly similar mark in

25   commerce.  *See Franklin*, 2018 WL 4103492, at *5 (dismissing trademark claims against

26   Instagram where it only "provides an application on which [third parties] publish images of the

27   infringing logo").

28

- 18 -

1    ***Second***, Plaintiff's breach of contract and tortious interference claims are inevitably

2    barred by Section 230(c)(1) no matter what additional facts she pleads (*see* Section IV.B, *supra*).

3    This is why courts generally deny leave to amend when "there is CDA immunity."  *See, e.g.,*

4    *King*, 2021 WL 5279823, at *13 (dismissing claims barred by Section 230 with prejudice

5    because "it would be futile for [Plaintiff] to try to amend the claim[s]"); *Murphy*, 60 Cal. App.

6    5th at 35 (trial court properly sustained demurrer without leave to amend because claims were

7    barred under Section 230); *Brittain v. Twitter, Inc.*, 2019 WL 2423375, at *4 (N.D. Cal. June 10,

8    2019) (dismissing claims barred by Section 230 with prejudice "[b]ecause plaintiff cannot cure

9    this defect").

10   **V.    CONCLUSION**

11          For the foregoing reasons, Meta respectfully requests that this Court grant its motion and

12   dismiss the FAC with prejudice.

13   Dated:  February 17, 2023                    Orrick, Herrington & Sutcliffe LLP

16                                        By:  */s/ Jacob M. Heath*
                                               _____
17                                             JACOB M. HEATH
                                               Attorney for Defendant
18                                             Meta Platforms, Inc.

- 19 -

1

2

**PROOF OF SERVICE**

3

        I am employed in the County of San Mateo, State of California.  I am over the age of 18

4

years old and not a party to this action.  My business address is Orrick, Herrington & Sutcliffe

5

LLP, 1000 Marsh Road, Menlo Park, California 94025.  On February 17, 2023, I served the

6

following document(s) entitled:

7

        1.  **DEFENDANT META PLATFORMS, INC.'S MOTION TO
             DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

8

on all interested parties to this action in the manner described as follows:

9

10

☒        **(VIA EMAIL)** On February 17, 2023, via electronic mail in Adobe PDF format the
          document(s) listed above to the electronic address(es) set forth below.

11

☐        **(VIA U.S. MAIL)** On February 17, 2023, by placing a true copy of the document(s) listed
          above in an envelope, with postage thereon fully prepaid, addressed as set forth below and
          then sealing the envelope and depositing it in the U.S. mail at Menlo Park, California.

12

13

14

Tiara N. Johnson
4740 Williston Street
Baltimore, MD 21229
tnewmanj22@gmail.com

15

16

17

Pro Se Plaintiff

18

        I declare under penalty of perjury under the laws of the State of California and the United

19

States that the foregoing is true and correct.

20

        Executed on February 17, 2023, at Fremont, California.

21

22

                                        */s/ Sema Virrueta*
                                        Sema Virrueta

23

24

25

26

27

28