UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TIARA N. JOHNSON,<br><br>    Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC. and JOHN DOE,<br><br>    Defendants. | Case No. 22-cv-05691-BLF<br><br>**ORDER GRANTING DEFENDANT META'S MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND; AND DISMISSING ACTION WITH PREJUDICE**<br><br>[Re: ECF 52] |

*Pro se* Plaintiff Tiara N. Johnson ("Johnson")[1] sues Defendant Meta Platforms, Inc. ("Meta") for disabling her Instagram account, which Johnson used to promote and sell "fine adult toys." *See* First Am'd Compl. ("FAC") ¶¶ 1, 28, ECF 21. Johnson also claims that Meta wrongfully allowed other users to open "imitation" accounts on Instagram in violation of her rights. *See id.* ¶¶ 58-62. She sues Meta for breach of contract, trademark infringement, and related claims. A second defendant, sued as John Doe, has been dismissed by separate order.

Before the Court is Meta's motion to dismiss the FAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Mot., ECF 52. Johnson has not filed opposition. Meta has filed a reply urging the Court to dismiss Johnson's claims with prejudice. *See* Reply, ECF 54. The Court previously vacated the motion hearing that had been scheduled for June 15, 2023. *See* Order, ECF 55.

For the reasons discussed below, Meta's motion to dismiss the FAC is GRANTED WITHOUT LEAVE TO AMEND, and the action is DISMISSED WITH PREJUDICE.

---

[1] Although Johnson was represented by counsel when she commenced this suit, she now is proceeding *pro se*. See Order Granting Withdrawal of Attorney, ECF 39.

## I. BACKGROUND

Johnson filed this action in Maryland state court on December 2, 2021, naming as defendants Facebook, Inc. – now known as Meta – and an unidentified individual sued as John Doe. *See* Not. of Removal, ECF 1. The action was removed to the United States District Court for the District of Maryland, after which Johnson filed the operative FAC. *See id.*; FAC, ECF 21. The Maryland district court issued an order recognizing that Facebook, Inc. had changed its name to Meta Platforms, Inc., and the docket was updated to reflect that name change.[2] *See* Order Granting Mot. to Recognize Change of Party Name, ECF 31. The Maryland district court thereafter transferred the case to the United States District Court for the Northern District of California, where it was assigned to the undersigned judge. *See* Mem. Order, ECF 41; Order Setting Initial CMC, ECF 43.

The FAC alleges the following: Meta is the owner and operator of the Instagram app. *See* FAC ¶ 2. Johnson downloaded the app and created an Instagram account in 2011. *See id.* ¶ 21. She operated her Instagram account under the user name @LICKMYKAKEZ. *See id.* ¶ 1. On or before January 1, 2020, Johnson started a business under the name KAKEYTAUGHTME, selling adult toys. *See id.* ¶ 26. She is the owner of the trademark KAKEYTAUGHTME with United States Patent & Trademark Office Application No. 88694236. *See id.* ¶ 27. Johnson promoted her business and other products through her Instagram account. *See id.* ¶¶ 1, 15, 28. She had 2.8 million Instagram followers and earned $10,000 per week from product sales. *See id.* ¶ 28.

On or about July 1, 2021, Meta disabled Johnson's Instagram account. *See* FAC ¶ 29. Meta did not communicate with Johnson to explain why her account was disabled. *See id.* ¶ 30. Johnson claims that Meta acted in violation of the Instagram Terms of Use ("TOU") when disabling her account. *See id.* ¶¶ 23-25, 29. Since disabling Johnson's account, Meta allegedly has allowed "false imitation accounts that claim to be Plaintiff and violating Plaintiff's trademark." *Id.* ¶ 33.

Johnson "was informed that a John Doe was paid to have her account suspended." *See*

---

[2] In light of the name change, and for the sake of simplicity, this order refers to this defendant as "Meta" even though the FAC uses the company's former name "Facebook."

FAC ¶ 31. Johnson contacted John Doe, who promised that he could get her account reactivated for $3,000. *See id.* ¶ 32. Johnson paid John Doe $3,000, after which he disappeared. *See id.*

Based on these allegations, Johnson asserts five claims: (1) breach of contract against Meta; (2) intentional interference with contractual relations against John Doe; (3) tortious interference with prospective economic relations against Meta; (4) federal trademark infringement under 15 U.S.C. § 1114 against Meta; and (5) federal unfair competition under 15 U.S.C. § 1125(a) against Meta.

On June 5, 2023, this Court issued an Order to Show Cause why John Doe should not be dismissed for failure to effect service of process within 90 days as required by Federal Rule of Civil Procedure 4(m). *See* OSC, ECF 56. Johnson did not respond to the Order to Show Cause. Accordingly, John Doe has been dismissed from this case by separate order.

Meta now seeks dismissal under Rule 12(b)(6) of all claims asserted against it. As noted above, Johnson has not responded to Meta's motion.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

The FAC asserts four claims against Meta: Claim 1 for breach of contract, Claim 3 for tortious interference with prospective economic relations, Claim 4 for trademark infringement under 15 U.S.C. § 1114, and Claim 5 for unfair competition under 15 U.S.C. § 1125(a). In its moving papers, Meta argues that all four claims are subject to dismissal for failure to allege sufficient facts. In its reply, Meta argues that the claims also are subject to dismissal based on Johnson's failure to oppose the motion to dismiss. The Court takes up these arguments in reverse order, first addressing the legal effect of Johnson's failure to oppose the motion, and then

3

addressing in turn the facts alleged in support of each claim.  Finally, the Court discusses the propriety of granting leave to amend.

### A.     Effect of Johnson's Failure to File Opposition

Meta urges the Court to grant its motion to dismiss based on Johnson's failure to file an opposition, citing *Ghazali v. Moran*, 46 F.3d 52 (9th Cir. 1995).  In *Ghazali*, the district court granted the defendants' motion to dismiss pursuant to a civil local rule of the District of Nevada providing that "'[t]he failure of the opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute a consent to the granting of the motion.'" *Id.* at 53 (quoting Dist. Nev. R. 140-6).  The Ninth Circuit affirmed the dismissal, noting that a district court's dismissal of an action pursuant to its local rules is reviewed for abuse of discretion, and that "[f]ailure to follow a district court's local rules is a proper ground for dismissal." *Id.*

*Ghazali* is distinguishable from the present case, as this district's civil local rules do not expressly authorize dismissal based on failure to oppose a motion to dismiss.  Some courts in this district nonetheless have relied on *Ghazali* in granting motions to dismiss based solely on the plaintiff's failure to oppose, reading *Ghazali* broadly to mean that "[t]he Ninth Circuit has held that the failure to file an opposition to a motion to dismiss is grounds for granting the motion." *Enders v. Countrywide Home Loans, Inc.*, No. C 09-3213 SBA, 2009 WL 4018512, at *2 (N.D. Cal. Nov. 16, 2009).  Other courts in this district have declined to apply *Ghazali*, noting that "[u]nlike the District of Nevada, the Northern District of California does not have a local rule providing that the failure to file an opposition constitutes consent to the granting of the motion." *Palma v. Dent*, No. C 06 6151 PJH, 2007 WL 2023517, at *2 (N.D. Cal. July 12, 2007).  In *Palma*, the district court determined that because "there is no provision in the local rules of this court that the failure to file an opposition will result in the granting of the motion . . . [Plaintiff] did not violate the local rules by failing to file an opposition." *Id.*  This Court agrees with *Palma* and other cases that have declined to apply *Ghazali* in the absence of a local rule in this district providing that failure to oppose a motion to dismiss constitutes a ground for dismissal.

Meta cites two other cases in support of its contention that Johnson's failure to file opposition constitutes a sufficient basis to grant the motion to dismiss.  In *Qureshi v. Countrywide*

4

1  *Home Loans, Inc.*, No. C09-4198 SBA, 2010 WL 841669 (N.D. Cal. Mar. 10, 2010), the plaintiff
2  filed opposition to the defendants' motion to dismiss, but the opposition failed to address a
3  particular claim. The district court determined that the plaintiff had abandoned the unaddressed
4  claim, relying on the Ninth Circuit's opinion in J*enkins v. Cnty. of Riverside*, 398 F.3d 1093 (9th
5  Cir. 2005). *Jenkins*, however, addressed the legal effect of a plaintiff's failure to oppose a motion
6  for summary judgment. Nothing in *Jenkins* suggests that a plaintiff's failure to oppose a motion to
7  dismiss constitutes abandonment. *See Jenkins*, 398 F.3d at 1095 n.4 ("Jenkins abandoned her
8  other two claims by not raising them in opposition to the County's motion for summary
9  judgment."). This Court declines to follow *Qureshi* in extending the Ninth Circuit's holding in
10 *Jenkins* from the summary judgment stage to the pleading stage.

11 The third case cited by Meta, *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008),
12 reiterates *Jenkins*' holding that a plaintiff abandons a claim by failing to raise it in opposition to
13 summary judgment. *Shakur* does not speak to the legal effect of a plaintiff's failure to file
14 opposition to a motion to dismiss and therefore is inapplicable here.

15 The Court declines to find that Johnson's failure to file opposition to the motion to dismiss
16 constitutes consent to dismissal or abandonment of her claims. The Court finds it appropriate to
17 evaluate Meta's motion to dismiss on the merits to determine whether Meta has shown that
18 Johnson's claims are inadequately pled under Rule 12(b)(6) standards.

19 **B.     Claim 1 for Breach of Contract**

20 Claim 1 is for breach of contract, specifically, the Instagram TOU. While the FAC
21 indicates that the TOU are attached as Exhibit A, *see* FAC ¶ 22, the TOU are not attached to the
22 FAC. The TOU are attached as Exhibit A to the original complaint, *see* Instagram TOU, Exh. A
23 to Compl., ECF 1-2, and presumably were omitted from the FAC due to a clerical error. The
24 Court will consider the TOU attached to the original complaint when evaluating Johnson's claim
25 for breach of contract. The TOU provide that California law governs the TOU and any claims
26 arising therefrom. *See id.*

27 "To state a claim for breach of contract under California law, Plaintiff must plead facts
28 establishing the following elements: (1) existence of the contract; (2) plaintiff's performance or

1  excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the
2  breach." *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 974 (N.D. Cal. 2010). Johnson
3  identifies the TOU as the contract and alleges that she herself did not violate the TOU. *See* SAC
4  ¶¶ 23, 30. She alleges that Meta breached its contractual obligations under the TOU by disabling
5  her account and allowing "new false and imitation accounts that claim to be Plaintiff and violating
6  Plaintiff's trademark." *Id*. ¶¶ 29, 33. Finally, Johnson claims that as result of her account being
7  disabled, she lost her ability to communicate with her 2.8 million followers and customers, and
8  lost at least $75,000 in income. *See id.* ¶¶ 29, 34.

9  These allegations are not sufficient to allege the third element, breach. "To properly plead
10 breach of contract, the complaint must identify the specific provision of the contract allegedly
11 breached by the defendant." *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal.
12 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) (internal quotation marks, citation, and brackets
13 omitted). Johnson does not identify any specific provision of the TOU that she contends was
14 breached by Meta's conduct in disabling her account and allowing other "imitation" accounts to
15 exist. The TOU expressly allow Meta to disable or terminate an Instagram account under several
16 circumstances, for example, where: disabling an account is necessary "to protect [Meta's]
17 community or services"; the user has created risk or legal exposure for Meta; the user has violated
18 the TOU or Meta's policies; the user has violated another's intellectual property rights; or
19 disabling an account is permitted or required by law. *See* TOU at 6, Exh. A to Compl., ECF 1-2.

20 In addition, Johnson's alleged lost profits related her Instagram account being disabled
21 appear to be barred by the TOU's limitation of liability provision, which provides that "You agree
22 that we won't be responsible ('liable') for any lost profits, revenues, information, or data, or
23 consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or
24 related to these Terms[.]" TOU at 8. Limitation of liability provisions are valid under California
25 law. *See Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012).
26 "With respect to claims for breach of contract, limitation of liability clauses are enforceable unless
27 they are unconscionable, that is, the improper result of unequal bargaining power or contrary to
28 public policy." *Id*. Johnson has not alleged any basis for disregarding the limitation of liability

6

provision in the Instagram TOU.

The motion to dismiss is GRANTED as to Claim 1.

### C. Claim 3 for Tortious Interference with Prospective Economic Relations

Claim 3 is for tortious interference with prospective economic relations. The elements of that claim are: "'(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.'" *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)).

Johnson alleges that Meta's decision to disable her Instagram account interfered with her contractual relationships with 2 Trill Promotions, LLC and others. *See* FAC ¶¶ 49-50. However, Johnson does not allege that Meta knew about particular relationships. Johnson alleges only that Meta "was aware that Plaintiff's account was a business account and its interference with such business account would reasonably infer [*sic*] with Plaintiff's business and relationships." *Id.* ¶ 52. Meta's general awareness that Johnson's Instagram account was a business account does not satisfy the second element of a tortious interference claim.

Moreover, to establish intentional interference with prospective economic relations, a plaintiff must plead that "the defendant's interference was wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995) (internal quotation marks and citation omitted). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003). While Johnson alleges in conclusory fashion that Meta's conduct was "intentional and improper," she does not allege any facts showing that Meta's decision to disable her Instagram account was wrongful under the above definition.

The motion to dismiss is GRANTED as to Claim 3.

### D.        Claim 4 for Trademark Infringement under 15 U.S.C. § 1114

Claim 4 is for federal trademark infringement under the Lanham Act, 15 U.S.C. § 1114. "To prevail on a claim for trademark infringement under 15 U.S.C. § 1114, a plaintiff must establish that (1) it owns the trademark at issue; (2) the defendant used in commerce without authorization any reproduction, counterfeit, copy, or colorable imitation of the mark in connection with the sale, offering for sale, distribution, or advertising of any goods and services; and (3) the defendant's use of the mark is likely to cause confusion, cause mistake, or deceive." *United States Futsal Fed'n v. USA Futsal LLC*, No. 17-CV-04206-LB, 2018 WL 2298868, at *10 (N.D. Cal. May 21, 2018).

Johnson's FAC does not satisfy these elements. As to the first element, ownership of the mark, Johnson alleges that she "is the owner of the trademark KAKEYTAUGHTME with United States Patent & Trademark Office Application Number 88694236," which she indicates is attached to the FAC as Exhibit B. FAC ¶ 57. The trademark registration is not attached to the FAC. The trademark registration is attached as Exhibit B to the original complaint, see Trademark Registration, Exh. B to Compl., ECF 1-2, and presumably was omitted from the FAC due to a clerical error. The Court will consider the trademark registration evaluating Johnson's § 1114 claim. However, the trademark registration lists a Tiara Welch as the owner of the trademark. The FAC does not explain who Tiara Welch is or how Johnson claims ownership of a mark registered to Tiara Welch.

As to the second element, use in commerce, Johnson does not allege that Meta has used her trademark or confusingly similar trademarks in commerce in connection with the sale, offering for sale, distribution, or advertising of any goods and services. Johnson alleges that third parties used her mark, or confusingly similar marks, on Instagram. *See* FAC ¶¶ 58-59. Allegations that third parties used her trademark is insufficient to allege liability against Meta.

Johnson alleges that Meta is liable for "secondary infringement," presumably meaning contributory infringement, because Meta allowed third parties to use her mark or imitations of her mark on Instagram. FAC ¶ 60. A trademark holder can prevail on a claim for contributory trademark infringement by showing that the defendant "continued to supply its services to one

8

who it knew or had reason to know was engaging in trademark infringement." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 942 (9th Cir. 2011). Where the defendant provides a service rather than a product, the plaintiff must show that the defendant had "[d]irect control and monitoring of the instrumentality used by a third party to infringe" the plaintiff's trademark. *Id*. Johnson alleges that Meta was "is aware that these Instagram accounts are creating a likelihood of confusion and [Meta] has turned a blind eye to these accounts." FAC ¶ 60. However, she does not allege any factual basis for her conclusory allegation regarding Meta's knowledge. Accordingly, her allegations of contributory trademark infringement are deficient.

As to the third element, likelihood of confusion, Johnson alleges that Meta's "use of a confusingly similar imitation of KAKEYTAUGHTME mark is likely to cause confusion, deception, and mistake by creating the false and misleading impression that [Meta's] goods and services are manufactured or distributed by Plaintiff, or are associated or connected with Plaintiff, or have the sponsorship, endorsement, or approval of Plaintiff." FAC ¶ 62. As discussed above, Johnson does not allege Meta's use of her mark at all. To the extent Johnson relies on use by third party users of Instagram, Johnson does not allege facts supporting her conclusory allegation that Instagram users are confused by the third party marks.

The motion to dismiss is GRANTED as to Claim 4.

**E.     Claim 5 for Unfair Competition under 15 U.S.C. § 1125(a)**

Claim 5 is for unfair competition under the Lanham Act, 15 U.S.C. § 1125(a). "[T]he elements needed to establish federal unfair competition under 15 U.S.C. § 1125(a) are identical to the elements needed to establish trademark infringement under 15 U.S.C. § 1114." *Mintz v. Subaru of Am., Inc.*, 716 F. App'x 618, 622 (9th Cir. 2017). The difference between the two statutory claims is that § 1114 protects against infringement of registered marks, while § 1125(a) protects against infringement of unregistered marks and trade dress as well as registered marks, and also protects against practices such as false advertising and product disparagement. *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 n.8 (9th Cir. 1999). Consequently, Claim 5 is subject to dismissal for the reasons discussed above with respect to Claim 4.

9

The motion to dismiss is GRANTED as to Claim 5.

### F. Section 230

Meta argues that even if Johnson had pled sufficient facts to state a claim for breach of contract and tortious interference, those claims would be subject to dismissal on the ground that Meta is entitled to immunity under Section 230 of the Communications Decency Act, 47 U.S. § 230. The Court need not determine whether Meta would be entitled to Section 230 immunity, as Johnson has failed to state a claim for breach of contract or intentional interference.

### G. Leave to Amend

Having determined that Johnson's claims against Meta are subject to dismissal, the Court must decide whether leave to amend is warranted. Leave ordinarily must be granted unless one or more of the following factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (discussing *Foman* factors).

Nothing in the record suggests that Johnson has engaged in undue delay (first factor) or acted in bad faith (second factor). Johnson has not failed to cure deficiencies by amendment; the present order is the first to evaluate her claims under the Rule 12(b)(6) standard (third factor). Allowing Johnson an opportunity to cure the deficiencies in her pleading would not unduly prejudice Meta (fourth factor).

However, amendment would be futile (fifth factor). The defects identified above go to the core of Johnson's claims against Meta. Johnson has not provided the Court with any basis to believe that she could amend her pleading to cure those defects. Although she entered into several stipulations with Meta regarding the case schedule, Johnson did not oppose Meta's motion to dismiss, did not respond to the Court's Order to Show Cause re dismissal of Defendant John Doe, and did not file any other document suggesting the existence of unpled facts that could save her claims. "Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018).

The motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.

## IV. ORDER

(1) Meta's motion to dismiss the FAC is GRANTED WITHOUT LEAVE TO AMEND.

(2) This action is DISMISSED WITH PREJUDICE.

(3) A separate judgment will be entered simultaneously with this order

(4) This order terminates ECF 52.

Dated: August 4, 2023

_____
BETH LABSON FREEMAN
United States District Judge